IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


DESIGN RESOURCES, INC.,          )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          1:10CV157
                                 )
LEATHER INDUSTRIES OF AMERICA,   )
DR. NICHOLAS J. CORY, ASHLEY     )
FURNITURE INDUSTRIES, INC.,      )
and TODD WANEK,                  )
                                 )
          Defendants.            )


**MEMORANDUM OPINION AND ORDER**


**OSTEEN, JR., District Judge**

        Presently before this court are the 12(b)(2) Motion to
Dismiss for Lack of Personal Jurisdiction (Doc. 20) filed by
Defendant Todd Wanek (hereinafter "Def. Wanek's 12(b)(2) Mot. to
Dismiss") and the 12(b)(2) Motion to Dismiss Design Resources,
Inc.'s Complaint for Lack of Personal Jurisdiction (Doc. 26)
filed by Defendant Dr. Nicholas J. Cory (hereinafter "Def. Cory's
12(b)(2) Mot. to Dismiss").  The parties have filed the
appropriate memoranda of law (see Docs. 21, 26-2, 35, 38, 41,
43), and this court conducted a hearing on the pending motions on
September 29, 2011.  Both of these matters are now ripe for
ruling, and, for the reasons set forth herein, this court will
grant both motions.

Additionally, in its brief, Plaintiff Design Resources, Inc. ("DRI") states that "[a]t minimum the Court should allow DRI the opportunity to conduct discovery on the jurisdictional issues." (Pl.'s Opp'n to Def. Todd Wanek's Mot. to Dismiss for Lack of Pers. Jurisdiction (Doc. 35) at 14[1] [hereinafter "Pl.'s Opp'n to Wanek's 12(b)(2) Mot. to Dismiss"]. To the extent that this statement is a motion for leave to conduct jurisdictional discovery, that motion will be denied.

Following this court's hearing on September 29, 2011, Plaintiff filed a motion to amend its complaint (Doc. 46). This court has granted that motion. (See Order (Doc. 49).) Plaintiff's amendment made two additions to its complaint. (See Pl.'s Mot. to Amend Compl. (Doc. 46) ¶¶ 1-2.) First, the amendment added an allegation that the amount in controversy exceeds $75,000. (See id. ¶ 1.) Second, the amendment added jurisdictional allegations regarding Plaintiff's presence at the

---

[1] Unless otherwise noted, all citations in this order to documents filed with the court refer to the page numbers electronically stamped at the bottom right-hand corner of the documents as they appear on CM/ECF.

High Point furniture shows in North Carolina.[2]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  <u>The Parties</u>

Plaintiff DRI is a Washington corporation with its principal place of business in Seattle, Washington.  (Complaint ("Compl.") (Doc. 1) ¶ 1.)  DRI is in the leather products business.  (<u>Id.</u> ¶ 23.)  More specifically, DRI markets and sells bonded leather products under the NextLeather® brand to customers primarily located in North America and Asia.  (<u>Id.</u> ¶ 24.)

According to the Complaint, Defendant Leather Industries of America ("LIA") is "a non-profit corporation organized in the District of Columbia with its principal place of business in the District of Columbia."  (<u>Id.</u> ¶ 2.)  LIA is a trade association representing American leather tanners and suppliers.  (<u>Id.</u> ¶ 27.)

---

[2] Specifically, the following allegation was added to the end of Paragraph 21 of Plaintiff's Complaint:

> At all times complained of herein and for 47 years, plaintiff has participated extensively in the semiannual High Point furniture shows during April and October, as well as the pre-markets which occur thirty days before the shows, at which plaintiff's products are displayed.  Plaintiff has also participated for almost fifteen years in a unique semiannual High Point fabric and leather show called 'Showtime' in June and December, at which it also displays its products. These shows provide a unique venue and the best opportunity for plaintiff to market and sell its products to potential buyers and account for a substantial volume of plaintiff's sales revenue.

(Pl.'s Mot. to Amend Compl. (Doc. 46) ¶ 2.)

-3-

Defendant Dr. Nicholas J. Cory ("Defendant Cory" or "Dr. Cory") is a resident of Ohio. (<u>Id.</u> ¶ 3; <u>see also</u> Def. Cory's 12(b)(2) Mot. to Dismiss, Attach. 2, Decl. of Dr. Nicholas J. Cory ("Cory Decl.") (Doc. 26-3) ¶¶ 3-5.) Dr. Cory is the Technical Director and Editor of LIA, as well as the Director of the Leather Research Laboratory.[3] (Compl. (Doc. 1) ¶¶ 11, 28.)

According to the Complaint, Defendant Ashley Furniture Industries, Inc., ("Ashley Furniture") is a Wisconsin corporation that is "headquartered in Arcadia, Wisconsin." (<u>Id.</u> ¶ 4.) Ashley Furniture is the "fifth largest furniture manufacturing company in the United States," with "various retail outlets in North Carolina." (<u>Id.</u> ¶ 26.) Todd Wanek ("Defendant Wanek" or "Mr. Wanek") is President and Chief Executive Officer of Ashley Furniture. (Def. Wanek's Mem. of Law in Supp. of Mot. to Dismiss, Attach. 1, Decl. of Todd Wanek ("Wanek Decl.") (Doc. 21-2) ¶ 2.) Mr. Wanek is a resident of Wisconsin. (<u>Id.</u> ¶ 1; <u>see also</u> Compl. (Doc. 1) ¶ 5.)

---

[3] The Leather Research Laboratory is a "department of the University of Cincinnati" and "a state-of-the-art facility dedicated to leather testing and research." (Compl. (Doc. 1), Ex. G (Doc. 1-8) at 2.) According to the Complaint, LIA and the Leather Research Laboratory "are so closely associated that they present themselves to the general public as affiliates with identical interests." (Compl. ¶ 29.) The two entities appear to share the same website. (<u>Id.</u>; <u>see also</u> <u>id.</u>, Ex. G. (Doc. 1-8) at 2.)

-4-

**B.    Background**

Plaintiff filed this action on February 26, 2010, against Defendants LIA, Dr. Cory, Ashley Furniture, and Mr. Wanek.  (See generally Compl. (Doc. 1).)  Plaintiff's Complaint asserts the following claims against all Defendants: (1) Count I - False Advertising under the Lanham Act; (2) Count II - Defamation/Product Disparagement/North Carolina Unfair Trade Practices Act; (3) Count III - Unfair Competition Under the Washington Consumer Protection Act; (4) Count IV - Tortious Interference with Business Relations and Expectancies; and (5) Count V - Civil Conspiracy.  (See id. at 22-27.)  Additionally, Plaintiff asserts the following claims against Defendants LIA and Dr. Cory specifically: (1) Count VI - Negligence and Fraudulent Concealment; (2) Count VII - Negligent Misrepresentation and Fraudulent Concealment; and (3) Count VIII - Breach of Contract/Breach of the Duty of Good Faith and Fair Dealing.  (See id. at 27-31.)  Finally, Plaintiff asserts as a separate count a claim for punitive damages against all Defendants.  (See id. at 31.)

Plaintiff's claims against Dr. Cory and Mr. Wanek arise primarily out of statements in the form of articles and advertisements published in the trade magazine Furniture Today. (See, e.g., Compl. (Doc. 1) ¶¶ 12-13, 19-21.)  According to Plaintiff's Complaint, Furniture Today, which is published in

-5-

High Point, North Carolina, is "the furniture industry's leading trade publication." (Id. ¶ 12.) On July 2, 2007, Furniture Today published an article written by Joan Gunin, entitled, "Chemist fears confusion over imitators may hurt category." (Compl., Ex. E (Doc. 1-6) at 2.) Ms. Gunin's article describes Dr. Cory's concerns over a new form of bonded leather and portrays Dr. Cory as "crusading to educate people about this new leather imitator."[4] (Id.) The article differentiates between the "original [form of] bonded leather," which consists of "a sheet of ground-up leather fibers embedded in a latex matrix, bound together with a fixative," and a "new bonded product," which "features several layers of laminated material." (Id.) The article quotes Dr. Cory as having said of bonded leather, "To call it 'leather' is outright deception, outright fraud. . . . It's not leather . . . . It's a synthetic that has leather fibers glued to the underside." (Id.)

---

[4] At times, Ms. Gunin's article appears to quote Dr. Cory verbatim; at other times, the article appears to paraphrase his interview, interjecting the words "Cory said" or "he said" in sentences without direct quotations. (See Compl., Ex. E (Doc. 1-6) at 2.) Nevertheless, in the absence of a sworn affidavit to the contrary, this court must construe the facts in the light most favorable to Plaintiff. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); Vogel v. Wolters Kluwer Health, Inc., 630 F. Supp. 2d 585, 594 (M.D.N.C. 2008); infra Part II at 14-19. Therefore, this court assumes for the sake of this motion that Dr. Cory did, in fact, make the assertions attributed to him in Ms. Gunin's article, even where paraphrased instead of directly quoted.

Nowhere in the article did Dr. Cory or Ms. Gunin reference DRI or the NextLeather® product by name. (<u>See generally</u> <u>id.</u>) However, Plaintiff alleges that "DRI was the first to market with NextLeather®." (Compl. (Doc. 1) ¶ 38.) Plaintiff also argues that the publication of the article was "carefully timed to coincide with the massive 'markets' or 'furniture shows' and 'pre-markets' occurring in High Point, North Carolina." (<u>Id.</u> ¶¶ 21, 45.) According to Plaintiff, "Dr. Cory's public statements denigrating DRI's NextLeather® were motivated by his desire to protect and advance the commercial interests of the leather manufacturing industry members of LIA to the detriment of DRI and its bonded leather product, NextLeather®." (<u>Id.</u> ¶ 13.)

Plaintiff alleges that Dr. Cory "also communicated to DRI's largest competitor, [D]efendant Ashley Furniture, and other competitors, that DRI was misrepresenting its NextLeather® product as bonded leather in order to deceive and confuse consumers," which, in turn, "supported Ashley's own smear campaign against DRI and NextLeather®." (<u>Id.</u> ¶ 19.) Plaintiff further claims that "Dr. Cory falsely told Ashley that DRI had 'pasted and made up' (<u>i.e.</u>, forged) the email communications between him and DRI." (<u>Id.</u> ¶ 20; <u>see also</u> <u>id.</u>, Ex. D (Doc. 1-5).) As a result of Dr. Cory's statements published in <u>Furniture</u> <u>Today</u> and to Ashley Furniture, Plaintiff argues that DRI was "deprived . . . of a unique, one-time opportunity to exploit and

-7-

capitalize on its position as the first to develop a novel, successful bonded leather product and create a new, emerging market niche in the furniture industry." (Id. ¶ 56.)

Plaintiff's claims against Ashley Furniture and Mr. Wanek stem from double-page advertisements that Ashley Furniture ran in Furniture Today "warn[ing] furniture manufacturers and other buyers of bonded leather to beware of upholstery suppliers who 'are using leather scraps that are misrepresented as leather.'" (Id. ¶ 19; see also id., Ex. L (Doc. 1-13) at 2-3.) The advertisement also advises customers, "Know What You Are Buying," "Don't let yourself be fooled. Don't unknowingly fool your customer: your reputation depends on it." (Id., Ex. L (Doc. 1-13) at 2.) The advertisement features an inset picture of a letter from the Office of the General Counsel for the U.S. Consumer Product Safety Commission.[5] (See id.) Plaintiff asserts that the "Ashley advertisements came in direct response to DRI's initial advertisements and product launch for

_____

[5] As submitted to this court, (see Compl. Ex. L (Doc. 1-13) at 2), the letter pictured in the advertisement is largely illegible. The letter appears to have been addressed to Mr. Ronald G. Wanek from Mr. Hyun S. Kim, but the substance of the letter is indecipherable. (See id.) In the absence of any evidence to the contrary, this court assumes, as Plaintiff alleges, that the letter "suggested that a federal agency had issued a cease and desist letter with respect to the practices regarding bonded leather described in the advertisement." (Id. ¶ 35.)

-8-

NextLeather®" and were carefully timed to coincide with the furniture markets in High Point, North Carolina. (Id. ¶ 37.)

Plaintiff also alleges that "Ashley has represented to actual and potential customers of DRI that NextLeather® is not bonded leather and that DRI was engaged in a misleading and fraudulent advertising and marketing campaign." (Id. ¶¶ 19, 35.) According to the Complaint, "Lisa Adair, Ashley's Vice President of Merchandizing [sic] and Design, told Alan Naness [president of DRI] that Todd Wanek had instructed Ashley's employees, including its sales force and account executives, to tell DRI's potential customers that DRI was falsely marketing NextLeather® as bonded leather." (Id. ¶ 39.)

### C. **Jurisdictional Allegations as to Defendant Dr. Cory**

Plaintiff makes very few allegations in its complaint concerning Defendant Cory's individual contacts with the state of North Carolina. Plaintiff does, however, allege in a conclusory fashion that Defendant Cory "committed tortious acts in the state of North Carolina, aimed at causing harm to DRI in North Carolina and the state of Washington" and that "[e]ach defendant's contacts with North Carolina have also been systematic and continuous." (Id. ¶ 7.) Plaintiff asserts that Dr. Cory "[has] sold [his] products and services in the state of North Carolina." (Id.) Finally, Plaintiff alleges, in a conclusory fashion, that

all the "Defendants combined and conspired with one another and other DRI competitors to destroy DRI's and NextLeather's reputation and good will . . . substantially in the state of North Carolina, around which the furniture industry is centered." (Id. ¶ 71.) Beyond those conclusory allegations, the only references in the Complaint to possible contacts with North Carolina by Dr. Cory concern Furniture Today's contacts with North Carolina. Plaintiff alleges that Furniture Today is published in North Carolina and that the Furniture Today article was timed to coincide with the furniture markets in High Point, North Carolina. (See id. ¶¶ 12, 21, 45.)

Dr. Cory filed a declaration in support of his motion to dismiss for lack of personal jurisdiction. (See Cory Decl. (Doc. 26-3).) Therein, Dr. Cory swears to the following: 1) that he has resided in Ohio since 1996; 2) that he files his state income tax returns in Ohio; 3) that he has never maintained a residence or owned any real property in North Carolina; 4) that he has never maintained any bank accounts or had any telephone listings in North Carolina; 5) that he has never sold any goods or performed any services in the state of North Carolina, nor has he traveled to North Carolina to sell goods or services or to solicit business. (Id. ¶¶ 3-13.) Dr. Cory also avers in his declaration that he "did not approach either Ms. Gunin or Furniture Today to request an interview or to discuss the new

-10-

product being called bonded leather."  (Id. ¶ 40.)  Instead, Dr. Cory avows that Ms. Gunin contacted him to request the interview and that he "was sitting at [his] office in the University of Cincinnati" while Ms. Gunin interviewed him.  (Id. ¶¶ 38-39.) Importantly, Plaintiff has not presented any affidavits or evidence to dispute the facts set forth in Dr. Cory's declaration.

### D.    <u>Jurisdictional Allegations as to Defendant Wanek</u>

Plaintiff also makes very few allegations in its Complaint concerning Defendant Wanek's individual contacts with the state of North Carolina.  Plaintiff alleges, in a conclusory fashion, that Defendant Wanek "committed tortious acts in the state of North Carolina, aimed at causing harm to DRI in North Carolina and the state of Washington" and that "[e]ach defendant's contacts with North Carolina have also been systematic and continuous."  (Compl. (Doc. 1) ¶ 7)  Second, Plaintiff alleges that Defendant Wanek "personally participated in [the] development and placement of [the] false advertising" that forms the basis of Plaintiff's claims.  (Id. ¶ 36.)  Plaintiff specifically refers to the advertisements that were published in <u>Furniture Today</u>, which is "located in High Point, North Carolina."  (Id. ¶ 12.)

Other than those two allegations, the remaining alleged contacts are those of Ashley Furniture, not Defendant Wanek personally.  Plaintiff alleges that Defendant Ashley has "sold [its] products and services in the state of North Carolina." (Id. ¶ 7.)  Plaintiff further asserts that Ashley Furniture "regularly attends marketing events in North Carolina associated with the furniture industry, and Ashley has various retail outlets in North Carolina."  (Id. ¶ 26.)  Plaintiff's Complaint, nevertheless, recognizes that "Ashley [Furniture] prides itself in maintaining operations far from the hub of furniture manufacturing in the United States, which centers around North Carolina."  (Id. (internal quotation marks omitted).)  Finally, although Plaintiff alleges that Ashley Furniture "has represented to actual and potential customers of DRI that NextLeather® is not bonded leather and that DRI was engaged in a misleading and fraudulent advertising and marketing campaign," Plaintiff fails to provide either the location of these customers or, in the

alternative, the location where the statements were made.[6]  (See id. ¶ 19.)

    Defendant Wanek also filed a declaration in support of his motion to dismiss for lack of personal jurisdiction.  (See generally Wanek Decl. (Doc. 21-2).)  According to his declaration, Mr. Wanek "do[es] not own or lease any real property in North Carolina, do[es] not have a bank account in North Carolina, and do[es] not reside in North Carolina."  (Id. ¶ 4.) Mr. Wanek further asserts that since 2007 he "ha[s] made approximately seven (7) trips to High Point, North Carolina to attend the semi-annual furniture markets in [his] capacity as

_____

    [6] Significantly, Plaintiff's allegations are vague as to where any injury may have occurred.  Even Plaintiff's amendment to the Complaint fails to specifically allege the location of Plaintiff's customers or the location where the allegedly defamatory statements were made.  (See Pl.'s Mot. to Amend Compl. (Doc. 46) ¶ 2.)  The proposed amendment adds an allegation that at various times over the last forty-seven (47) years, DRI has attended various furniture-related events in High Point, North Carolina.  (See id.)  Nowhere, however, does Plaintiff connect its attendance at these events to the specific location of any injury allegedly sustained.  Furthermore, regardless of where injury may have occurred, for this court to have personal jurisdiction, Defendant must have "entered the state in some fashion."  Indianapolis Colts v. Metropolitan Baltimore Football Club Ltd. P'ship, 34 F.3d 410, 412 (7th Cir. 1994) ("In Calder as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes Calder itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also 'entered' the state in some fashion. . . ."); see also ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625-26 (4th Cir. 1997).

-13-

Ashley's CEO" and "approximately two (2) times on other business for Ashley." (Id. ¶ 5.)  Mr. Wanek denies making any trips to North Carolina for personal reasons since 2007.  (Id.)  Finally, Mr. Wanek denies having any involvement in the development or placement of the Ashley Furniture advertisement that was published in Furniture Today.  (Id. ¶ 6.)  Mr. Wanek, however, "do[es] not recall if [he] reviewed the advertisement or was shown a copy of it prior to its publication."  (Id.) Importantly, Plaintiff has not presented any affidavits or evidence to dispute the facts set forth in Mr. Wanek's declaration.

## II.  LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure "provides for dismissal where the court lacks personal jurisdiction over a particular named defendant."  Fields v. Trollinger, No. 1:10cv296, 2011 WL 3422689, at *4 (W.D.N.C. Mar. 28, 2011); see also Fed. R. Civ. P. 12(b)(2).  When a defendant properly challenges the court's personal jurisdiction through a Rule 12(b)(2) motion, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

-14-

> If the existence of jurisdiction turns on disputed
> factual questions the court may resolve the challenge
> on the basis of a separate evidentiary hearing, or may
> defer ruling pending receipt at trial of evidence
> relevant to the jurisdictional question.  But when, as
> here, the court addresses the question on the basis
> only of motion papers, supporting legal memoranda and
> the relevant allegations of a complaint, the burden on
> the plaintiff is simply to make a prima facie showing
> of a sufficient jurisdictional basis in order to
> survive the jurisdictional challenge.  In considering a
> challenge on such a record, the court must construe all
> relevant pleading allegations in the light most
> favorable to the plaintiff, assume credibility, and
> draw the most favorable inferences for the existence of
> jurisdiction.

Id. (citations omitted).

"Where the defendant has provided evidence, however, that denies facts essential for jurisdiction, the plaintiff must present sufficient evidence to create a factual dispute on each jurisdictional element that has been denied by the defendant and on which the defendant has presented evidence."  Vogel v. Wolters Kluwer Health, Inc., 630 F. Supp. 2d 585, 594 (M.D.N.C. 2008). See Wolf v. Richmond Cnty. Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984) ("In ruling on a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except insofar as controverted by the defendant's affidavit, must be taken as true.") (emphasis added) (internal quotation marks omitted).

-15-

"In a federal question case,[7] where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process."  Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004); see also Planet Techs., Inc. v. Planit Tech. Grp., LLC, 735 F. Supp. 2d 397, 400 (D. Md. 2010).  The Lanham Act does not provide for nationwide service of process.  See McDonald, 362 F.3d at 22; AARP v. Am. Family Prepaid Legal Corp., 604 F. Supp. 2d 785, 804 (M.D.N.C. 2009).

Therefore, for this court to assert personal jurisdiction over non-resident Defendants Cory and Wanek, two conditions must be satisfied.  See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) [hereinafter "Christian Sci."].  First, the court's exercise of personal jurisdiction must be authorized by North Carolina's

---

[7] This court recognizes that Plaintiff's amendment to its complaint included an allegation that the amount in controversy exceeds the sum of $75,000, thereby possibly providing this court with diversity jurisdiction over Plaintiff's state law claims. (See Pl.'s Mot. to Amend Compl. (Doc. 46) ¶ 1.)  However, the personal jurisdiction analysis is substantively the same whether this court's subject matter jurisdiction is based on diversity of citizenship or federal question.  See generally Autoscribe Corp. v. Goldman & Steinberg, No. 94-1749, 1995 WL 56662, at *3 (4th Cir. 1995) (unpublished table decision) ("As in diversity cases, a court sitting pursuant to federal question jurisdiction must engage in a two-step analysis."); see also Wolf, 745 F.2d at 909 (setting forth the two-part test for determining personal jurisdiction in a diversity suit).

long-arm statute.  Id.  Second, the exercise of jurisdiction must

comport with the requirements of due process.[8]  Id.  Because

"North Carolina's long-arm statute is construed to extend

jurisdiction over nonresident defendants to the full extent

permitted by the Due Process Clause," the two-part inquiry

normally "collapse[s] into a single inquiry as to whether the

defendant has such minimal contacts with the forum state that

maintenance of the suit does not offend traditional notions of

fair play and substantial justice."  Id. (quoting Int'l Shoe Co.

v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks

omitted).  Nevertheless, "[e]ven though the inquiries merge, if

jurisdiction is not authorized under the North Carolina Long Arm

Statute, the court need not engage in additional due process

analysis."  Moseley v. Fillmore Co., 725 F. Supp. 2d 549, 560

(W.D.N.C. 2010); see also Planet Techs., Inc., 735 F. Supp. 2d at

400.  If the court does reach the due process analysis, then the

court should "evaluate 'the burden on the defendant, the forum

State's interest in adjudicating the dispute, the plaintiff's

---

        [8]  Because Count I of Plaintiff's Complaint is a false
advertising claim under the federal Lanham Act, "the dictates of
due process," as to Count I, "derive from the Fifth Amendment,"
rather than the Fourteenth Amendment which applies to the
remaining state-law claims of Plaintiff's Complaint.  Planet
Techs., Inc., 735 F. Supp. 2d at 400 (internal quotation marks
omitted).  Nonetheless, "the same principles apply."  Id.; see
also DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 283
(3d Cir. 1981).

interest in obtaining convenient and effective relief, the
interstate judicial system's interest in obtaining the most
efficient resolution of controversies, and the shared interest of
the several States in furthering fundamental substantive social
policies.'" Christian Sci., 259 F.3d at 217 (quoting Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

"The standard for determining the existence of personal
jurisdiction over a nonresident defendant varies, depending on
whether the defendant's contacts with the forum state also
provide the basis for the suit." Carefirst of Md., Inc. v.
Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir.
2003). If the defendant's contacts with the forum state "form
the basis for the suit," then the court may have "specific
jurisdiction" over the defendant. Id. Courts consider several
factors in determining whether specific jurisdiction exists: "(1)
the extent to which the defendant has purposefully availed
[himself] of the privilege of conducting activities in the state;
(2) whether the plaintiff['s] claims arise out of those
activities directed at the state; and (3) whether the exercise of
personal jurisdiction would be constitutionally reasonable." Id.
(internal quotation marks omitted).

If the defendant's contacts with the forum state do not form
the basis for the suit, then the court may still have "general
jurisdiction" over the defendant. See id.; see also Helicopteros

-18-

<u>Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414-15 (1984)

[hereinafter "<u>Helicopteros</u>"].  However, the standard for

establishing general personal jurisdiction over a defendant is "a

more demanding standard than is necessary for establishing

specific jurisdiction."  <u>ALS Scan, Inc. v. Digital Serv.</u>

<u>Consultants, Inc.</u>, 293 F.3d 707, 712 (4th Cir. 2002).  In order

to have general personal jurisdiction over a defendant, "the

defendant's activities in the State must have been continuous and

systematic."  <u>Id.</u> (internal quotation marks omitted).

## III. ANALYSIS

### A.   Defendant Dr. Nicholas J. Cory

Dr. Cory contends that personal jurisdiction over him "is

not authorized by the North Carolina Long Arm Statute, N.C. Gen.

Stat. § 1-75.4, and the exercise of jurisdiction over Dr. Cory

does not comport with due process." (Def. Cory's 12(b)(2) Mot. to

Dismiss (Doc. 26) at 1-2.)

#### i.   North Carolina Long-Arm Statute

Plaintiff has not made clear which provision of the North

Carolina long-arm statute it relies upon in asserting

jurisdiction over Dr. Cory.  The only provision of the long-arm

statute cited in Plaintiff's responsive brief is subsection (4),

the "Local Injury; Foreign Act" provision.  (<u>See</u> Pl.'s Opp'n to

Def. Cory's Mot. to Dismiss ("Pl.'s Br. in Opp'n to Cory's Mot.")

-19-

(Doc. 38) at 17 (arguing that "this Court has jurisdiction over out-of-state defendants whose acts occurring outside of this State cause injury within this state" and citing as authority N.C. Gen. Stat. § 1-75.4(4)).)  At the hearing, when specifically asked which provision of the long-arm statute Plaintiff relies upon with respect to each Defendant, counsel for Plaintiff responded that it relies upon subsection (4) as to Defendant Cory and Defendant Wanek.  (Tr. of Mots. Hr'g (Doc. 47) at 7.) Following the hearing, counsel for Plaintiff submitted a letter to this court via e-mail, indicating instead that it intends to rely upon subsection (3) of the long-arm statute as to Defendant Cory.  However, given the fact that Plaintiff has failed to allege any "local act or omission" committed by Dr. Cory in North Carolina, see N.C. Gen. Stat. § 1-75.4(3), this court finds that any attempt by Plaintiff to rely upon subsection (3) of the long-arm statute fails.

Subsection (4) appears to be the only provision of the North Carolina long-arm statute that could potentially apply to Dr. Cory.  Subsection (4) provides for jurisdiction over a nonresident defendant where the plaintiff has suffered an "injury to person or property within [North Carolina]" as a result of "an act or omission [committed] outside [North Carolina] by the defendant," provided that one of the following three other conditions is satisfied: (a) solicitation or service activities

-20-

were carried on in North Carolina by or on behalf of the defendant; (b) products, materials, or things processed, serviced or manufactured by the defendant were used or consumed in North Carolina in the ordinary course of trade; or (c) unsolicited bulk commercial electronic mail was sent into or within North Carolina by the defendant.  See N.C. Gen. Stat. § 1-75.4(4).

First, Plaintiff has failed to demonstrate that the North Carolina long-arm statute authorizes jurisdiction over Dr. Cory because Plaintiff has failed to allege that it sustained any injury in North Carolina.  See id.  Plaintiff is a Washington corporation with its principal place of business in Seattle, Washington.  (Compl. (Doc. 1) ¶ 1.)  Plaintiff also has an office in Shanghai, China.  (Id. ¶ 25.)  According to the Complaint, Plaintiff's finished goods are manufactured in Europe and Asia and then sold to customers "primarily located in North America and Asia."  (Id. ¶¶ 23-24.)  Plaintiff claims a connection to North Carolina because North Carolina is where "the furniture industry is centered."  (Id. ¶ 71.)  In a similar vein, Plaintiff alleges that the "markets," "furniture shows," and "pre-markets" in High Point, North Carolina, are the "largest events of their kind in the United States and possibly the world."  (Id. ¶ 37.)  Plaintiff further alleges that manufacturers, wholesalers, and retailers tend to make their major buying decisions at the High Point furniture markets.  (See id.)  Nevertheless, even assuming

-21-

these allegations to be true, Plaintiff fails to allege any fact, in specific or conclusory fashion, concerning how <u>Plaintiff itself</u> is connected to the furniture markets or any other fact which could support a finding of injury to Plaintiff in North Carolina.[9]

Plaintiff attempts to remedy this failure via its motion to amend by alleging, <u>inter alia</u>, that it "has participated extensively in the semiannual High Point furniture shows." (Pl.'s Mot. to Amend Compl. (Doc. 46) ¶ 2.  However, even considering this additional allegation for the purposes of this motion, Plaintiff has failed to demonstrate that it suffered an injury in North Carolina that arose out of any act or omission by Dr. Cory.  Merely stating that DRI has attended furniture shows in High Point and that "[t]hese shows . . . account for a substantial volume of plaintiff's sales revenue" (<u>see id.</u>) does not demonstrate that DRI suffered an injury in North Carolina arising out of an act or omission by Dr. Cory.  Other than its

_____

[9]  In its memorandum in opposition to Defendant Wanek's motion to dismiss for lack of personal jurisdiction, Plaintiff asserts in its statement of facts that "Wanek and DRI's owner Alan Naness attend the same events and trade shows as competitors in the furniture industry – they are targeting the same customers in High Point."  (Pl.'s Opp'n to Wanek's 12(b)(2) Mot. to Dismiss (Doc. 35) at 3.)  However, Plaintiff failed to make this allegation in its complaint or by supporting affidavit.  (<u>See generally</u> Compl. (Doc. 1).)  Therefore, the allegation that DRI or Alan Naness, on behalf of DRI, attended furniture markets in High Point, North Carolina, is not a part of the record before this court.

general presence at the High Point furniture shows, Plaintiff identifies no business transactions that took place or were thwarted in North Carolina, nor any customers located in North Carolina. (See generally Compl. (Doc. 1).) Although Plaintiff contends that Dr. Cory's statements in the Furniture Today article reached its "actual and potential" customers, (id. ¶ 45), Plaintiff has not alleged that any of those customers were in North Carolina when the statements reached them, nor has DRI alleged that those customers resided in North Carolina or even that they attended the furniture markets in North Carolina. (See generally id.) Put simply, Plaintiff's allegation that its customers are "primarily located in North America and Asia" does not show that Plaintiff suffered an injury in North Carolina arising out of any act or omission by Dr. Cory, as required by subsection (4) of the North Carolina long-arm statute. See N.C. Gen. Stat. § 1-75.4(4).

Second, Plaintiff fails to show how it satisfies any one of the three sub-requirements of subsection (4). See N.C. Gen. Stat. § 1-75.4(4)(a)-(c). At the hearing, this court asked counsel for Plaintiff which sub-requirement of § 1-75.4(4) Dr. Cory had satisfied, and counsel for Plaintiff responded that he was "not sure . . . as to the Defendant Cory." (Tr. of Mots. Hr'g (Doc. 47) at 40.) Following the hearing, counsel for Plaintiff submitted a letter to the court, indicating that

-23-

Plaintiff relies upon sub-requirements (a) and (b) as to Defendant Wanek, but Plaintiff again failed to indicate which sub-requirement applies to Dr. Cory.[10]  Therefore, Plaintiff has failed to demonstrate that the North Carolina long-arm statute authorizes jurisdiction over Dr. Cory.

### ii.  Due Process Analysis

Even assuming that jurisdiction over Dr. Cory is authorized by the North Carolina long-arm statute, Plaintiff has also failed to show that the requirements of due process have been met. Plaintiff contends that this court has specific jurisdiction over Dr. Cory,[11] arguing that Dr. Cory's "defamatory statements to Furniture Today," as appearing in Ms. Gunin's article, were directed at North Carolina.  (Pl.'s Br. in Opp'n to Cory's Mot. (Doc. 38) at 5-7.)  Specifically, Plaintiff alleges that "Dr. Cory knew that his statements to Ms. Gunin . . . would be published in Furniture Today, a magazine based in High Point,

---

[10]  Presumably, the inapplicability of subsection (4)'s sub-requirements to Dr. Cory is why Plaintiff attempts to argue, for the first time in its letter to the court, that subsection (3) of the long-arm statute applies to Dr. Cory.  See N.C. Gen. Stat. § 1-75.4(3), (4).

[11]  Importantly, Plaintiff does not argue that this court has general jurisdiction over Cory.  (See generally Pl.'s Br. in Opp'n to Cory's Mot. (Doc. 38) (arguing that this court only has specific jurisdiction and "conspiracy theory jurisdiction" over Dr. Cory).)

North Carolina and with its primary circulation in North Carolina." (Id. at 7.)

Plaintiff's statement that Furniture Today's "primary circulation" is in North Carolina is not supported by the evidence. According to statistics submitted by Plaintiff, the state with the largest circulation for Furniture Today is California, with 1,840 recipients. (See id., Ex. 1 (Doc. 38-2) at 6.) North Carolina has the second highest circulation, with 1,705 recipients. (See id.) Overall, North Carolina represents only about 8.3% of Furniture Today's total qualified circulation. (See id.) Thus, the statistical information submitted by Plaintiff fails to support Plaintiff's contention that Furniture Today's "primary circulation [is] in North Carolina." (Pl.'s Br. in Opp'n to Cory's Mot. (Doc. 38) at 7.) Plaintiff has presented no facts to support its argument that Dr. Cory's statements targeted North Carolina, such that he purposefully availed himself of the privilege of doing business in the state. See Carefirst of Md., Inc., 334 F.3d at 397.

Furthermore, Plaintiff attempts to improperly conflate Furniture Today's contacts with the state of North Carolina with those of Dr. Cory. However, "[e]ach defendant's contacts with the forum State must be assessed individually." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984); McFarlane v. Esquire Magazine, 74 F.3d 1296, 1300-01 (D.C. Cir. 1996) ("The

-25-

writer is not the publisher; [the writer's] contacts must be assessed separately.").

In support of its argument that jurisdiction is appropriate, Plaintiff also cites a number of cases to support the proposition that libelous statements are actionable where the offending material is circulated. (See Pl.'s Br. in Opp'n to Cory's Mot. (Doc. 38) at 4-8.) Given Dr. Cory's statements to Furniture Today, Plaintiff argues, "Dr. Cory should have reasonably anticipated being haled into court in North Carolina." (Id. at 8.)

The facts of this case are similar to those in Wilson v. Belin, 20 F.3d 644 (5th Cir. 1994). In Wilson, a Texas reporter contacted two nonresident defendants to interview them about their reactions to a speech made by the plaintiff. Id. at 646. The reporter later quoted the defendants' statements in a newspaper article published in Texas. Id. As in this case, the plaintiff in Wilson argued that "a libelous tort is deemed to have occurred where the offending material is circulated" and that the defendant "could foresee that the defamatory remarks would be published in Texas." Id. at 648. In response to the foreseeability argument, the court reasoned that the defendants "took no planned action to inject themselves or their opinions into the Texas forum. Each simply received one unsolicited phone call from Texas. They sent no money or materials into Texas, and

neither ever bound themselves to Texas law – even implicitly – concerning the [allegedly libelous statements]." Id. at 649. Furthermore, the court stated that the fact that the libel occurred where the material was circulated – that is, in Texas – "will not win the day for [the plaintiff]. That the tort is deemed to have occurred in whole or in part in Texas is simply not dispositive of whether jurisdiction is appropriate." Id. at 648.

The Wilson court further noted that

neither Blakey nor Belin did any preparation for a story to defame the plaintiff. They did not even write or devise a story. They did no research regarding Wilson's theory in Texas or elsewhere. Furthermore, there is no indication that these defendants were paid for their comments, that their comments were part of a planned business venture, or that such unsolicited comments served any role in advancing their business careers. Finally, the plaintiff, Wilson, is not a Texas resident and his career is not centered there. Thus, the dispositive facts in Calder simply are absent from this case.

Id. (citing Calder v. Jones, 465 U.S. 783, 791 (1984)). Similarly, Plaintiff has not shown that Dr. Cory took any planned steps to inject his opinions into the North Carolina forum or even into Furniture Today. Rather, Ms. Gunin contacted Dr. Cory to request an interview. (Cory Decl. (Doc. 26-3) ¶¶ 38, 40.) Moreover, Plaintiff does not suggest that Dr. Cory was paid for his comments or that his comments advanced his business career. (See generally Compl. (Doc. 1).) Thus, the only nexus to North

-27-

Carolina is <u>Furniture Today</u>'s presence in North Carolina. (<u>See</u> <u>id.</u> ¶ 12.) This connection is simply too tenuous to support a finding that Dr. Cory somehow purposefully directed activities and contacts into this state, nor has Plaintiff shown that North Carolina has any "interest in adjudicating [this] dispute" or that Plaintiff's interest in obtaining convenient and effective relief is served in North Carolina. <u>See</u> <u>Christian Sci.</u>, 259 F.3d at 217 (<u>quoting</u> <u>Burger King Corp.</u>, 471 U.S. at 477); <u>see</u> <u>also</u> <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 203, 207-09 (1st Cir. 1994) (holding that Massachusetts lacked personal jurisdiction over a California lawyer who gave a phone interview knowing his comments would form the basis of a newspaper article to be circulated in Massachusetts because the plaintiff failed to show that the defendant's interview responses constituted purposeful availment); <u>Madara v. Hall</u>, 916 F.2d 1510, 1517 (1990) (holding that Florida did not have specific personal jurisdiction over a defendant-musician who gave a libelous phone interview from New York to a reporter for a magazine in California, despite the fact that the defendant-musician had performed in Florida several times).

Plaintiff's lack of connection to North Carolina makes Dr. Cory's contacts "random, isolated, and fortuitous," rather than purposefully directed at North Carolina. <u>Keeton</u>, 465 U.S. at 774. Because Plaintiff has both failed to show that the North

-28-

Carolina long-arm statute authorizes personal jurisdiction over Dr. Cory and that the requirements of due process have been met, Defendant Cory's motion to dismiss Plaintiff's Complaint (Doc. 26) will be granted.

### B.    **Defendant Todd Wanek**

At the outset, this court addresses Plaintiff's argument that this court has personal jurisdiction over Mr. Wanek because he "may be adjudged liable for [his] unfair trade practices." (Pl.'s Opp'n to Wanek's 12(b)(2) Mot. to Dismiss (Doc. 35) at 7.) In making this argument, Plaintiff cites the legal test that governs whether corporate officers may be held personally liable for actions taken on behalf of the corporation, but this court will not reach the issue of liability unless it first determines that it has personal jurisdiction over Defendant Wanek.  In other words, "'the potential for personal liability of a corporate officer . . . is no substitute for a determination of whether the Court may exercise personal jurisdiction over the officer.'" Planet Techs, Inc., 735 F. Supp. 2d at 402 (quoting Amhil v. Enters. Ltd. v. Wawa, Inc., Civ. A. No. HAR 93-1349, 1994 WL 750535, at *4 (D. Md. Dec. 16, 1994)); see also AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 590-91 (9th Cir. 1996) (stating that "liability is not to be conflated with amenability to suit in a particular forum").

While it is true that a defendant's status as a corporate employee does not "somehow insulate [him] from jurisdiction," the court must, nevertheless, assess each defendant's contacts with the forum state individually. Calder v. Jones, 465 U.S. 783, 790 (1984). A corporate employee's contacts with a forum state "are not to be judged according to their employer's activities there." Id. See also Planet Techs, Inc., 735 F. Supp. 2d at 402 ("[P]ersonal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation.") (internal quotation marks omitted). Nevertheless, "if an individual defendant is 'a principal shareholder of the corporation and conducts business in North Carolina as principal agent for the corporation, then his [own] corporate acts may be attributed to him' for purposes of personal jurisdiction." Western Steer-Mom 'N' Pop's, Inc., v. FMT Invs., Inc., 578 F. Supp. 260, 264 (W.D.N.C. 1984) (quoting United Buying Grp., Inc. v. Coleman, 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979)). See also ePlus Tech., Inc., v. Aboud, 313 F.3d 166, 177 (4th Cir. 2002) (holding that a district court's exercise of personal jurisdiction was proper when the defendant-employee had sufficient contacts with the forum state, even when "those contacts were made ostensibly on behalf of [the corporation for which the defendant was an agent]").

### i.    North Carolina Long-Arm Statute Analysis

Plaintiff has failed to specifically assert in the Complaint or in its responsive brief which provision of the North Carolina long-arm statute it relies on to invoke this court's jurisdiction over Defendant Wanek.  At the hearing, counsel for Plaintiff informed this court that it relies upon subsection (4).  (Tr. of Mots. Hr'g at 7.)  Following the hearing, Plaintiff submitted a letter to this court in an attempt to "submit additional authority with regard to the matters argued before the court."  Therein, Plaintiff contends that both subsections (3) and (4) of the long-arm statute apply to Defendant Wanek.  Notwithstanding Plaintiff's failure to include this contention in its Complaint or responsive brief, this court will address the applicability of each subsection in turn.

Subsection (3) of the North Carolina long-arm statute, as noted above, provides a court with personal jurisdiction over a defendant "[i]n any action claiming injury to person or property . . . arising out of an act or omission within [North Carolina] by the defendant."  N.C. Gen. Stat. § 1-75.4(3).  Implicit in this provision is a requirement that the plaintiff's injury be causally connected to the defendant's local act or omission.  Plaintiff has failed to allege that Defendant Wanek committed any act or omission <u>within North Carolina</u> that caused Plaintiff injury.  Plaintiff does allege that Defendant Wanek "committed

-31-

tortious acts in the state of North Carolina, aimed at causing harm to DRI in North Carolina and the state of Washington"; however, this conclusory allegation, without more, is insufficient to identify the local act or omission that led to Plaintiff's alleged injury. (Compl. (Doc. 1) ¶ 7.) The only North Carolina acts by Defendant Wanek set forth in the record are the trips to North Carolina on behalf of Ashley Furniture that Defendant Wanek himself discloses in his declaration. (See Wanek Decl. (Doc. 21-2) ¶ 5.) Plaintiff does not allege that Mr. Wanek committed any act on any of these trips that caused Plaintiff injury. The requirements of subsection (3) of North Carolina's long-arm statute are therefore not met in this case.

With regard to subsection (4), Plaintiff's argument fails for the same reasons articulated in this court's long-arm statute analysis as to Dr. Cory. (See supra, 19-24.) Specifically, Plaintiff has failed to show that it suffered an injury in North Carolina arising out of any act or omission by Mr. Wanek, as required by subsection (4). See N.C. Gen. Stat. § 1-75.4(4).

### ii. Due Process Analysis

Even assuming that jurisdiction over Mr. Wanek is authorized by the North Carolina long-arm statute, Plaintiff has nevertheless failed to show that exercising jurisdiction over Mr. Wanek would comport with the requirements of due process.

-32-

### a.  Specific Jurisdiction

As noted previously, when considering whether to exercise specific jurisdiction over a defendant, this court considers: "(1) the extent to which the defendant has purposefully availed [himself] of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Md., Inc., 334 F.3d at 397.

Plaintiff has failed to demonstrate that its claims against Mr. Wanek arise out of any activities that Mr. Wanek purposefully directed at the state of North Carolina. Id.  In its responsive brief, Plaintiff continues to rely on its bare allegation that Mr. Wanek "personally participated in [the] development and placement" of the Ashley Furniture advertisement in Furniture Today. (See Compl. (Doc. 1) ¶ 36.)  However, that allegation has been controverted by Defendant Wanek in a sworn declaration. (Wanek Decl. (Doc. 21-2) ¶ 6 ("I was not involved in developing the advertisement. . . .  I also was not involved in placing the advertisement in Furniture Today magazine.").)  Because Plaintiff has failed to respond to Mr. Wanek's declaration with a contradictory declaration, this court is no longer required to take as true Plaintiff's allegation that Mr. Wanek participated in the development and placement of the advertisement. See Wolf,

-33-

745 F.2d at 908; <u>Convergence Techs.</u>, 711 F. Supp. 2d at 637; <u>see also</u> <u>supra</u> Part II at 14-19.  In its brief, Plaintiff appears to recognize this problem because Plaintiff argues, in the alternative, that Mr. Wanek's denials in his declaration are not credible.[12]  Even if Mr. Wanek's photograph on the advertisement amounted to an endorsement of the advertisement, that would be insufficient to establish jurisdiction.  The advertisement photograph fails to show that Mr. Wanek "entered" the state for purposes of personal jurisdiction or that Mr. Wanek, as opposed to Ashley Furniture, directed or targeted any conduct toward North Carolina.  <u>See, e.g.</u>, <u>Young v. New Haven Advocate</u>, 315 F.3d 256, 264 n.1 (4th Cir. 2002)(finding that the court lacked personal jurisdiction over a newspaper company that had not purposefully directed its internet activity toward the state of

_____

[12] On page four (4) of its responsive brief, Plaintiff contends that "Wanek accepts that if he personally participated in the <u>Furniture Today</u> advertisements . . . [then] this Court [would have] personal jurisdiction over him."  (<u>See</u> Pl.'s Opp'n to Def. Wanek's 12(b)(2) Mot. to Dismiss ("Pl.'s Br. in Opp'n to Wanek's Mot.") (Doc. 35) at 4.)  This is a misstatement of Defendant Wanek's position altogether.  In support of that contention, Plaintiff cites to pages five (5) through seven (7) of Mr. Wanek's brief in support of his motion to dismiss.  (<u>See id.</u>; <u>see also</u> Def. Wanek's Mem. of Law in Supp. of Mot. to Dismiss (Doc. 21) at 5-7 [hereinafter "Mem. Supp. Wanek's 12(b)(2) Mot."].)  However, on those pages, Defendant Wanek specifically argues, "Even if the Court accepted the allegation [that he personally participated in developing the advertisement] as facially true, it does not establish that Mr. Wanek 'purposefully availed' himself of the privilege of doing business in North Carolina . . . ."  (Mem. Supp. Wanek's 12(b)(2) Mot. (Doc. 21) at 6.)

Virginia).  Plaintiff bases its credibility argument on the fact
that Mr. Wanek's picture appears in the advertisement.  In the
absence of additional evidence, this court does not find that the
presence of Mr. Wanek's picture in the advertisement, which
appears to be the type of stock picture one might find on a
business card, discredits his specific denial.  Plaintiff further
argues that this court should discount the credibility of Mr.
Wanek's denial based on the fact that "Lisa Adair, Ashley's Vice
President of Merchandizing [sic] and Design, told Alan Naness
that Todd Wanek had instructed Ashley's employees, including its
sales force and account executives, to tell DRI's potential
customers that DRI was falsely marketing NextLeather® as bonded
leather."  (Pl.'s Br. in Opp'n to Wanek's Mot. (Doc. 35) at 5-6;
see also Compl. (Doc. 1) ¶ 39.)  Putting aside the hearsay issue
this assertion presents, Ms. Adair's statement to Mr. Naness does
not tend to prove or disprove whether Mr. Wanek personally
participated in the development of the advertisement.

Other than the presence of Mr. Wanek's picture in the
advertisement, Plaintiff's only basis for arguing that Mr. Wanek
'purposefully availed' himself of the privilege of conducting
activities in North Carolina is the alleged fact that Mr. Wanek,
along with his father, has "absolute control over [Ashley
Furniture]" by virtue of his role as CEO and status as a majority
shareholder.  (Pl.'s Br. in Opp'n to Wanek's Mot. (Doc. 35) at

-35-

1.)  These bare allegations are insufficient for this court to find that Wanek "purposefully availed" himself of the privilege of conducting activities in the state of North Carolina. See Columbia Briargate Co. v. First Nat'l Bank in Dallas, 713 F.2d 1052, 1064 (4th Cir. 1983).[13]

### b.  General Jurisdiction

Plaintiff alleges that this court has general jurisdiction over Mr. Wanek because "his repeated visits to North Carolina have been systematic and continuous."  (See Pl.'s Br. in Opp'n to Wanek's Mot. (Doc. 35) at 11.)  In its Complaint, Plaintiff does not allege any facts that would support the exercise of general jurisdiction over Mr. Wanek, other than the conclusory allegation that his contacts with North Carolina have been "systematic and continuous."  (Compl. (Doc. 1) ¶ 7).  However, Mr. Wanek's own declaration does set forth several facts that could support a prima facie showing of general jurisdiction.  Nevertheless, these contacts ultimately fall short of the "continuous and systematic contacts" necessary to provide this court with personal

---

[13]  This court notes that Mr. Wanek admitted in his declaration that he could not "recall if [he] reviewed the advertisement or was shown a copy of it prior to its publication."  (Wanek Decl. (Doc. 21-2) ¶ 6.)  Even assuming that Mr. Wanek reviewed or approved the advertisement, this court would still find that his conduct did not amount to "purposeful availment."

jurisdiction over Mr. Wanek, regardless of the nature of the claims against him. See Helicopteros, 466 U.S. at 415.

In his declaration, Mr. Wanek avers that he "[has] made approximately seven (7) trips to High Point, North Carolina to attend the semi-annual furniture markets in [his] capacity as Ashley's CEO" since 2007. (Wanek Decl. (Doc. 21-2) ¶ 5.) Additionally, Mr. Wanek "traveled to North Carolina approximately two (2) times on other business for Ashley." (Id.) Neither Plaintiff nor Mr. Wanek allege or aver any facts related to Mr. Wanek's activities in North Carolina prior to 2007. (See generally Compl. (Doc. 1); Wanek Decl. (Doc. 21-2).) Mr. Wanek does not own or lease any real property in North Carolina, nor does he have a bank account in the state. (Wanek Decl. (Doc. 21-2) ¶ 4.)

The Fourth Circuit has held that "broad constructions of general jurisdiction should be generally disfavored." Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1200 (4th Cir. 1993). "In fact, with regard to non-residents, general jurisdiction is ordinarily reserved for those defendants who have such substantial contacts with the forum state that they may be considered 'essentially domiciled' within that state." Estate of Bank v. Swiss Valley Farms Co., 286 F. Supp. 2d 514, 517-18 (D. Md. 2003) (quoting Atlantech Dist., Inc. v. Credit Gen. Ins. Co., 30 F. Supp. 2d 534 (D. Md. 1998))

-37-

In AARP, 604 F. Supp. 2d at 802, another court in this district held that it did not have general jurisdiction over two corporate officers of a prepaid legal services corporation who had participated in a "scheme to unlawfully pass off their services as AARP-endorsed." One of the corporate officers had executed a lease for office space in North Carolina on behalf of the company while physically present in the state. Id. He later visited the North Carolina office on two separate occasions. The other corporate officer had "made four visits to North Carolina." Id. His activities in North Carolina included interviewing and hiring a state marketing director, executing a lease for office space, explaining a preliminary injunction to the company's local employees, and obtaining legal advice. Nevertheless, the AARP court found that the officers' "contacts with the state of North Carolina [did] not rise to the level of the type of continuous and systematic contacts to establish a basis for the exercise of general jurisdiction." Id.

Similarly, this court concludes that Mr. Wanek's nine trips to North Carolina fall short of the quantity and type of continuous and systematic contacts sufficient to establish a basis for the exercise of general jurisdiction. See also Smith v. Jefferson Cnty. Chamber of Commerce, 683 F. Supp. 536, 538 (D. Md. 1988) (holding that Maryland did not have general jurisdiction over business owners where their only contacts with

-38-

Maryland included "making a monthly purchasing trip to the state, making four deliveries to an agent of a customer in the state, amassing a large percentage of gross revenues from customers located in the state, and allowing an agent to advertise on their behalf in the state").  In light of Plaintiff's failure to allege any further facts and its failure to cite any pertinent legal authority that would suggest that Mr. Wanek's nine trips to North Carolina are sufficient, this court finds that Plaintiff has failed to make a prima facie showing of general jurisdiction.

### iii. Jurisdictional Discovery Motion

Although "[d]iscovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted," the Fourth Circuit has recognized that "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them].'"  Carefirst of Md., Inc., 334 F.3d at 402 (quoting Mylan Labs, Inc. v. Azko, N.V., 2 F.3d 56, 64 (4th Cir. 1993)).  Moreover, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."  Id. (citing McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983)).  See also ALS Scan, 293 F.3d at 716 n.3 (upholding a district court's denial of the opportunity to conduct jurisdictional discovery because the plaintiff "failed . . . to proffer any further facts that it could

-39-

demonstrate that would be material to the . . . jurisdictional ruling" and because the plaintiff did not suggest that the jurisdictional facts asserted by the defendant in its affidavits were inaccurate); Rich v. KIS Cal., Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

Here, Plaintiff has not controverted Mr. Wanek's denial of personal involvement in the development of the allegedly false advertisement at issue. Moreover, the remainder of Plaintiff's allegations concerning Mr. Wanek's contacts with North Carolina amount to mere "speculation or conclusory assertions." Carefirst of Md., Inc., 334 F.3d at 402. Therefore, this court will deny Plaintiff's motion.

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant Cory's and Defendant Wanek's motions to dismiss for lack of personal jurisdiction (Docs. 20, 26) are hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to conduct jurisdictional discovery is **DENIED.**

-40-

This the 28th day of September, 2012.

William L. Osteen, Jr.
United States District Judge

-41-