IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DESIGN RESOURCES, INC.,           )
                                  )
              Plaintiff,          )
                                  )
        v.                        )        1:10CV157
                                  )
LEATHER INDUSTRIES OF AMERICA     )
and ASHLEY FURNITURE              )
INDUSTRIES, INC.,                 )
                                  )
              Defendants.         )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before the court on the Motion for Attorney's Fees in the amount of $530,412.50 filed by Defendant Leather Industries of America ("LIA"), (Doc. 239), and the Motion for Attorneys' Fees in the amount of $594,684.45 filed by Defendant Ashley Furniture Industries, Inc. ("Ashley"), (Doc. 242), (collectively, "Defendants"). Plaintiff Design Resources, Inc. ("DRI") filed a Combined Response. (Doc. 246.) LIA and Ashley each filed a Reply. (Docs. 249, 248.)

Plaintiff asserted three main procedural bars against Defendants' motions: (1) Defendants' failure to plead with specificity; (2) Defendants' failure to file within Local Rule 54.2's 60-day timeframe; and (3) Defendants' failure to engage in consultation regarding attorneys' fees, as required by Local

Rule 54.2. (Pl.'s Combined Resp. to Mots. for Attorneys' Fees
("DRI Combined Resp.") (Doc. 246).) In a Memorandum Opinion and
Order on December 8, 2015, this court rejected the first two
procedural arguments and then held in abeyance Defendants'
motions pending consultation by the parties regarding attorneys'
fees. (See Mem. Op. & Order (Doc. 250) at 2-14.) The parties
filed a Joint Status Report on January 21, 2016, stating that
they had engaged in the required consultation but, despite their
good faith efforts, no resolution had been reached. (Joint
Status Report (Doc. 251) at 1.) Consequently, the motions are
again ripe for adjudication and this court will consider the
parties' remaining substantive arguments.

I.  **PARTIES**

Defendant LIA requests attorney's fees in the amount of
$530,412.50, (Doc. 239 at 1), and Defendant Ashley requests
attorneys' fees in the amount of $594,684.45, (Doc. 242 at 3),
both pursuant to the Lanham Act, 15 U.S.C. § 1117(a) and N.C.
Gen. Stat. § 22-6.1,[1] for defending against DRI's Lanham Act
false advertising claim and state law claims.

---

[1] For reasons discussed infra, this court addresses N.C.
Gen. Stat. § 6-21.5, which is the relevant statute and appears
to be the statute under which Defendants are actually moving.

## II.  <u>LEGAL STANDARD — AVAILABILITY OF FEES</u>

The Lanham Act permits that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). "Awards of attorneys['] fees under . . . the Lanham Act . . . are not to be made as a matter of course, but rather as a matter of the court's considered discretion . . . ." <u>Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.</u>, 205 F.3d 137, 144 (4th Cir. 2000).

Exceptional cases include those cases "'that stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" <u>Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.</u>, 781 F.3d 710, 720 (4th Cir. 2015) (quoting <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, ____ U.S. ____, ____, 134 S. Ct. 1749, 1755 (2014)). "[W]e conclude that there is no reason not to apply the <u>Octane Fitness</u> standard when considering the award of attorneys fees under § 1117(a)." <u>Georgia-Pacific</u>, 781 F.3d at 721.

In summarizing this standard, the Fourth Circuit held that exceptional cases, judged on the totality of the circumstances, are those where:

-3-

(1) there is an unusual discrepancy in the merits of
the positions taken by the parties, based on the non-
prevailing party's position as either frivolous or
objectively unreasonable, (2) the non-prevailing party
has litigated the case in an unreasonable manner; or
(3) there is otherwise the need in particular
circumstances to advance considerations of
compensation and deterrence.

Id. (internal quotation marks and citations omitted). This

standard allows for "a showing of something less than bad faith"

and "[r]elevant considerations include[ing] economic coercion,

groundless arguments, and failure to cite controlling law." San

Francisco Oven, LLC v. Fransmart, Inc., 222 F. App'x 235, 237

(4th Cir. 2007) (internal quotation marks and citations

omitted).

## III. **ANALYSIS — AVAILABILITY OF FEES**

Exclaim Mktg., LLC v. DirecTV, LLC provides a helpful

framework for analyzing Lanham Act claims under the three-

pronged approach outlined in Georgia-Pacific. Exclaim Mktg.,

No. 5:11-CV-684-FL, 2015 WL 5725703, at *7 (E.D.N.C. Sept. 30,

2015).

### A. **Frivolous or Objectively Unreasonable**

Objectively unreasonable claims are judged "based on 'an

objective assessment of the merits of the challenged claims and

defenses.'" Exclaim Mktg., 2015 WL 5725703, at *7 (quoting Old

Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 544

-4-

(Fed. Cir. 2011)). This standard requires that the claim be "'so unreasonable that no reasonable litigant could believe it would succeed.'" Id. (quoting Old Reliable, 635 F.3d at 544). While a party may ultimately lose on a legal issue, if the position is not objectively unreasonable and the court's ruling at the motion to dismiss stage did not explicitly eliminate the possibility of finding that claim, the party may be entitled to proceed as it did at the summary judgment stage. First Data Merch. Servs. Corp. v. SecurityMetrics, Inc., Civil Action No. RDB-12-2568, 2015 WL 5734413, at *13 (D. Md. Sept. 22, 2015).

Plaintiff emphasizes that its "claims and defenses were supported by substantial evidence and legal authority" particularly as they survived early motions without indications of their groundlessness and as they were only dismissed at summary judgment. (DRI Combined Resp. (Doc. 246) at 12-16.)  It argues that "Defendants are not entitled to attorneys' fees simply because the Court accepted their arguments and rejected DRI's.  This case presented novel issues, and its outcome was not predetermined by controlling authority that was directly on point. . . . and [it] clearly presented justiciable legal and factual issues." (Id. at 16.)

LIA argues that it is entitled to attorneys' fees from Plaintiff under the Lanham Act because this case qualified as

exceptional. (Def. LIA's Br. in Supp. of Mot. for Attorney's
Fees ("LIA Br.") (Doc. 240) at 10.) LIA urges that Plaintiff
made groundless arguments since it should have known, based on
the court's prior ruling, that it would be unable to prevail on
its Lanham Act claim with the evidence gathered during
discovery. (Id. at 10-11.) Substantively, LIA asserts that "at
the time DRI filed its motion for summary judgment, it knew that
it could not establish the threshold element of its Lanham Act
false advertising claim, i.e., that the alleged advertisements
were false." (LIA's Reply in Supp. of Mot. for Attorney's Fees
("LIA Reply") (Doc. 249) at 2.)[2]

Ashley provides a more detailed analysis of the claims,
looking at both DRI's literal falsity claim and its implied
falsity theory. (See Ashley's Br. in Supp. of Mot. for
Attorneys' Fees ("Ashley Br.") (Doc. 245) at 7-9.) On appeal,
the Fourth Circuit described DRI's literal falsity by necessary
implication claim as "confounding," finding:

> [T]o arrive at [DRI's] conclusion, one has to follow
> DRI's winding inquiry far outside the face of the ad,
> which the concept of literal falsity by necessary
> implication does not allow us to do. And, one has to

---

[2] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

be willing to accept that the ad means the opposite of
what it says, an interpretation we find insupportable.

Design Res., Inc. v. Leather Indus. of Am., 789 F.3d 495, 502
(4th Cir. 2015). The Fourth Circuit also critiqued DRI's
argument as "stretch[ing] the concept of literal falsity beyond
its bounds in urging us to conclude that the ad means the
opposite of what it says." Id. at 503. It further critiqued DRI
as "fail[ing] to substantiate a theory of implied falsity in the
Ashley Ad." Id. at 504.

Ashley emphasizes that this court and the Fourth Circuit
rejected Plaintiff's arguments "as wholly without merit" to show
that Plaintiff's position was groundless and objectively
unreasonable. (Ashley Br. (Doc. 245) at 6-8.) It asserts that
Plaintiff's arguments simply did not reflect reasonable
interpretations of the evidence and thus the objective
reasonableness standard is satisfied. (Id.) Specifically, it
argues that Plaintiff's "literal falsity theory was objectively
unreasonable," that it "knew or should have known when it
received the Klein Survey that it could no longer maintain its
claim of implied falsity," and that its "continued litigation

rendered the case exceptional." (Ashley's Reply Br. in Supp. of Mot. for Attorney's Fees ("Ashley Reply") (Doc. 248) at 9.)[3]

In response, DRI argues that "[a]lthough the Court ultimately resolved the issues of law in favor of defendants after considering all the evidence, DRI's claims were far from 'groundless' and were supported by significant evidence and legal authority," (DRI Combined Resp. (Doc. 246) at 2), emphasizing that the court dismissed DRI's claim only because "DRI did not offer enough evidence to satisfy one element of its Lanham Act claim — that Ashley made a false or misleading representation of fact in a commercial advertisement about DRI's product." (Id.) DRI also emphasizes that the holding as to LIA hinged on a missing adjective (leather vs. bonded leather) when

---

[3] The Klein Survey (Declaration of Brent F. Powell, Ex. 13 (Doc. 121-13)) is referenced several times in the parties' arguments on this issue and is summarized by Defendant Ashley as follows:

> On August 30, 2013, Ashley served DRI with the results of a survey performed by Robert Klein with Applied Marketing Science, Inc. (the "Klein Survey"). Significantly, not a single survey respondent identified the "Is It Really Leather?" ad as referring to DRI or NextLeather. The survey data led Mr. Klein to conclude "that there is no reason to believe that individuals in the furniture industry who attend High Point Markets would interpret the Ashley advertisement as referring to DRI or NextLeather®."

(Ashley Br. (Doc. 245) at 2-3 (citations omitted).)

determining that the "statement was not literally or impliedly false." (Id. at 3.) DRI argues that while it lost at summary judgment, this court and the Fourth Circuit did not deem its claims "groundless" or as having a "complete absence of a justiciable issue of either law or fact," further emphasizing that it survived the earlier motions to dismiss and that the summary judgment was supported by substantial evidence. (Id.)

Nevertheless, the Lanham Act provides for an award of attorneys' fees when the conduct of the litigation becomes unreasonable over time. See Georgia-Pacific, 781 F.3d at 720. In keeping with this, over time, a party's position and litigation approach may move from being objectively reasonable to becoming unreasonable and perhaps exceptional.

LIA presents Spalding Labs., Inc. v. Ariz. Biological Control, Inc., No. CV 06-1157 ODW (SHx), 2008 WL 2227501 (C.D. Cal. May 29, 2008), for the proposition that attorneys' fees may be appropriate when a party "persisted in litigating . . . after the point when it should have known it lacked evidence to establish its claims." (LIA Br. (Doc. 240) at 12.) The problematic conduct in Spalding — "press[ing] forward and requir[ing] [defendant] to litigate for 10 days in front of a jury . . . knowing it no longer had" significant pieces of evidence — followed "several vehemently contested motions in

-9-

limine" and an unfavorable Daubert hearing. Spalding, 2008 WL
2227501, at *1. While the present situation may not rise to the
factual level of Spalding, this court does observe Spalding's
conceptual theme — that a plaintiff is obligated to continually
assess the strength of its claim throughout the litigation. See
id.

In keeping with this line of analysis and contextual
evaluation of the parties' positions and arguments, Ashley
argues that its advertisement here "was part of a broader
industry service campaign by Ashley intended to address issues
of concern to the furniture industry." Ashley Br. (Doc. 245) at
1-2 (citing (Docs. 121-7, 112 at 1).) While Ashley's campaign
was reportedly directed at products from China marketed as
leather, it is reasonable that Plaintiff believed itself to be a
direct or indirect target of this campaign, even though Ashley
contended it was not aware of Plaintiff's product. (Ashley's Br.
in Opp'n to Pl.'s Mot. for Relief from Spoliation of Evidence,
Declaration of Ron Wanek (Doc. 112) at 2.)

Furthermore, this campaign by Ashley involved parallel, or
related, activity with respect to bonded leather-type products
by LIA and Dr. Nicholas J. Cory. Because the advertisements and
campaign contained strong language about misrepresentation (such
as, beware of upholstery suppliers who "are using leather scraps

-10-

that are misrepresented as leather" (Sept. 28, 2012 Mem. Op. &
Order (Doc. 54) at 8)), this case began as an objectively
reasonable claim. Because the Lanham Act provides for claims
based upon a representation that may be literally true but is
"likely to mislead and confuse consumers given the merchandising
context," C.B. Fleet Co. v. SmithKline Beecham Consumer
Healthcare, L.P., 131 F.3d 430, 434 (4th Cir. 1997), this court
found, and continues to find, that Plaintiff's claim was
objectively reasonable at the inception of this litigation,
entitling Plaintiff to proceed to discovery on its claims.[4]

A party has an on-going responsibility to evaluate the
merits of its case and positions. Should a position, even if
previously not within the purview of exceptional behavior,
migrate to a questionable classification, a party has the
responsibility to react and respond accordingly. Thus, a party
should continue to evaluate the reasonableness of its litigation
strategy as the case progresses to ensure that conduct does not
cross the line from reasonable to questionable. See Lumen View
Tech. LLC v. Findthebest.com, Inc., 811 F.3d 479, 482-83 (Fed.

---

[4] Although this court dismissed prior Defendants
Dr. Nicholas J. Cory and Todd Wanek on jurisdictional grounds
(Sept. 28, 2012 Mem. Op. & Order (Doc. 54) at 40 (granting
"Defendant Cory's and Defendant Wanek's motions to dismiss for
lack of personal jurisdiction (Docs. 20, 26)"), this court does
not find that conduct to be unreasonable.

-11-

Cir. 2016); Kilopass Tech., Inc. v. Sidense Corp., 738 F.3d 1302, 1310-11 (Fed. Cir. 2013).

This court finds the recent opinion, Gravelle v. Kaba Ilco Corp., No. 5:13-CV-642-FL, 2016 WL 3920208 (E.D.N.C. July 15, 2016), to be particularly instructive on the present matter. Gravelle saw a court awarding attorney's fees to a defendant after that defendant prevailed at summary judgment on all three claims in the face of the plaintiff's cross motion for summary judgment. See Gravelle, 2016 WL 3920208. The plaintiff, proceeding pro se, brought three claims: "false marking in violation of the Patent Act, 35 U.S.C. § 292; and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125; as well as a state law claim for violation of the North Carolina Unfair and Deceptive Practices Act ("UDPA"), N.C. Gen. Stat. § 75-1.1 et seq."[5] Id. at *1. The court awarded attorney's fees against the plaintiff for advancing "exceptionally meritless" claims. Id. at *2. The Gravelle plaintiff "failed to produce any evidence to suggest [its] sales had been damaged by defendant's false marking" and "did nothing to demonstrate a decrease in

---

[5] The Patent Act and the Lanham Act both use the "exceptional" standard enumerated in Octane Fitness, LLC v. ICON Health & Fitness, Inc., ____ U.S. ____, ____, 134 S. Ct. 1749, 1756 (2014), allowing the Gravelle court to merge its analysis of each claim. See Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015).

-12-

[its] sales . . . or to connect that decrease to [the defendant's conduct]." Id. In that situation, "[p]laintiff's lack of evidence demonstrated a lack of thoughtful consideration about the quantum of evidence necessary not only to prove his claim but to substantiate it at the most basic level." Id. Succinctly put, the Gravelle court awarded attorney's fees against a pro se plaintiff for continuing to pursue its Lanham Act claim through a motion for summary judgment after discovery revealed no facts to support that claim due to a lack of causation and a lack of provable damages. See id.

Further, this court finds LendingTree, LLC v. Zillow, Inc., 54 F. Supp. 3d 444, 463 (W.D.N.C. 2014), to be illustrative. In LendingTree, the court held that the case was "exceptional, and [defendant was] entitled to attorneys' fees." Id. Specifically, "[t]he Court [found] that [plaintiff] should have realized the strength of [defendant's] defenses at summary judgment." Id. LendingTree appears to have progressed farther procedurally than the current matter, but that court held that the plaintiff was responsible for a continuing assessment of relevant evidence and defenses to the viability of its claims before awarding attorneys' fees to the defendant. See id.

Finally, this court looks to Astornet Techs., Inc. v. BAE Sys., Inc., which awarded attorneys' fees to a defendant

prevailing under the Patent Act when the plaintiff's actions were deemed "exceptional." Astornet Techs., Case No. RWT 14-cv-0245, 2016 WL 4141006, at *4 (D. Md. Aug. 4, 2016). In Astornet Techs., "[t]he record reflect[ed] that [plaintiff] continued to litigate the case even after it knew that it could not prevail on the merits based on strong precedential evidence." Id. See also Phonometrics, Inc. v. ITT Sheraton Corp., 64 Fed. Appx. 219, 221 (Fed. Cir. 2003)). The Astornet Techs. court concluded that "[plaintiff]'s continued pursuit of baseless claims that had no chance of success, combined with its inability to provide a good-faith basis excusing this conduct, demonstrate that this case is 'exceptional' and that awarding attorneys' fees is appropriate." Astornet, 2016 WL 4141006, at *4.

Likewise, in the present case, discovery failed to demonstrate that the advertising campaign by Ashley, or the statements by Dr. Cory, were literally false. Relatedly, the evidence gleaned in discovery failed to reveal any evidence that the campaign included statements that were literally true but "likely to mislead and to confuse customers given the merchandising context." C.B. Fleet, 131 F.3d at 434.

To the contrary, evidence, such as the Klein Survey, obtained by Defendants, and Plaintiff's own evidence, such as the statements of Harley Greenfield and Martin Silver

-14-

(Declaration of John R. Neeleman in Support of DRI's Mot. for
Partial Summ. J. against Def. Ashley, Ex. A (Doc. 107-1) at 14;
Ex. B at 23), did not reveal any confusion of consumers within
the merchandising context. Consequently, given the progression
of the case and the influx of information, the context of the
case changed. Upon a continued evaluation of the relative
strengths of the respective positions and arguments, DRI's re-
evaluation of its position should have been influenced by the
fact that no facts were indicating consumer confusion and there
were no questionable statements that fell within the contours of
the Lanham Act. Regardless of the initial merit or
reasonableness of the positions, the later review of the
positions should have caused the parties to re-evaluate the
relative strength of the case and their positions, making DRI's
behavior more into the realm of the exceptional.

As a result of this review, this court finds that the
components of this case result in the conclusion that attorneys'
fees should be awarded to Ashley and LIA as a result of
Plaintiff's failure to continually assess the substantive
strength of its litigation position, particularly by the
conclusion of discovery.

**B.   Litigated in an Unreasonable Manner**

An unreasonable manner of litigation does not require that conduct be sanction-worthy and instead can be fulfilled when "the non-prevailing party engages in some form of egregious conduct," such as "the filing of false declarations and attempts to re-litigate issues decided prior to trial." Exclaim Mktg., 2015 WL 5725703, at *8 (citations omitted). This standard has been judged looking at how the case as a whole was litigated, rather than particular instances. See id.

For example, in San Francisco Oven, LLC v. Fransmart, Inc., 222 F. App'x 235 (4th Cir. 2007), the Fourth Circuit affirmed a grant of attorneys' fees when the plaintiff "had brought the Lanham Act claim in bad faith, solely to avoid an impending dismissal for lack of subject matter jurisdiction. The [district] court [had] further emphasized that [plaintiff] had pursued the claim without any substantial factual or legal basis to support it." 222 F. App'x at 236-37. Courts have also considered whether the case was brought in subjective bad faith, even though that is not a required element. See Armacell LLC v. Aeroflex USA, Inc., No. 1:13cv896, 2015 WL 3891435, at *5 (M.D.N.C. June 24, 2015).

In support of this prong, Ashley argues that DRI "engaged in aggressive litigation tactics" to increase expenses, "adopted

-16-

a strident and accusatory tone," and "went out of its way to cast aspersions on both the parties and their counsel," including "accus[ing] Ashley of lying and destroying evidence." (Ashley Br. (Doc. 245) at 10.) Ashley further argued that DRI's "fundamentally flawed damages model" caused increased expenses when deposing those experts and attempting to conduct discovery. (Id. at 11.)

Ashley further argues that it is also entitled to attorneys' fees under the Lanham Act because Plaintiff engaged in unreasonable litigation conduct by filing baseless motions and repeatedly revising pleadings beyond deadlines, thus increasing litigation costs and complexity, and because it meets the standards under the Lanham Act. (See id. at 6.) It further bases the motion on Plaintiff's "aggressive litigation tactics" including, among other things, "a strident and accusatory tone" and "a fundamentally flawed damages model[.]" (Id. at 10-12.) Notably, it focuses on Plaintiff's post-motion-to-dismiss conduct, especially given the exchange during discovery. (Id.)

Ashley advances a number of reasons this court should find Plaintiff's general litigation approach and strategy to be condemnable, (Ashley Br. (Doc. 245) at 7-12), but "conduct triggering relief must go beyond an aggressive litigation strategy." Intellectual Ventures I LLC v. Capital One Fin.

<u>Corp.</u>, Civil Action No. 1:13CV0740 (AJT/TCB), 2015 WL 7283108, at *6 (E.D. Va. Nov. 17, 2015) (citing <u>Gametek, LLC v. Zynga</u>, 2014 WL 4351414, at *4-5 (N.D. Cal. Sept. 2, 2014) (collecting cases)). As such, this court focuses its analysis primarily on DRI's failure to continually assess the plausibility of its claims as an unreasonable manner of litigation "so 'exceptional' as to justify an award of fees,'" as indicated above. <u>Exclaim Mktg.</u>, 2015 WL 5725703, at *8 (citing <u>Octane Fitness</u>, 134 S. Ct. at 1757).

### C. **Compensation or Deterrence**

Compensation and deterrence are based on the particulars of the case. <u>Exclaim Mktg.</u>, 2015 WL 5725703, at *8. The deterrence "standard is met when the infringer acted 'with the intent to infringe the plaintiff's protected mark[]' . . . . [and] this factor requires proof that the defendant acted with the subjective intent to violate the plaintiff's trademark." <u>Id.</u> (citations omitted).

In support of its economic coercion, compensation, and deterrence arguments in favor of Lanham Act sanctions, LIA asserts that it "was forced to file its own cross-motion for summary judgment" following DRI's motion for summary judgment. (LIA Br. (Doc. 240) at 11.) In the very same paragraph, however, LIA asserts that DRI's claim was "groundless," (<u>id.</u> at

-18-

12), perhaps raising the question of how it was only DRI's motion that prompted LIA's cross-motion, rather than the merits of DRI's claim.

LIA further posits that the length of this case and size of the claim sought "represented a coercive attempt to force the settlement of a groundless claim." (Id. at 11.) Additionally, it argues that Plaintiff filing a summary judgment motion despite insufficient evidence "unnecessarily increased LIA's litigation costs[,]" demonstrating more groundless litigation and coercive attempts to push settlement. (Id. at 11-12.)

Ashley emphasizes the high amount of fees incurred, even after evidence arguably showed that DRI's claims were baseless as well as the need to "send a strong message to future litigants that they remain under a duty to evaluate the strength of their cases as the lawsuit progresses" in support of this factor. (Ashley Br. (Doc. 245) at 12.)

This court recognizes the importance of deterring litigants from pursuing their claims even when the claim has fallen apart following discovery due to a lack of supporting evidence, reinforcing this court's decision to award attorney's fees.

## IV. <u>LEGAL STANDARD — FEE AMOUNT</u>

As the Fourth Circuit recently articulated, "[t]he proper calculation of an attorney's fee award involves a three-step process." <u>McAfee v. Boczar</u>, 738 F.3d 81, 88 (4th Cir. 2013)

First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." <u>Id.</u> at 89 (quoting <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 243 (4th Cir. 2009)). However, in order to "ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in <u>Johnson v. Georgia Highway Express Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974)." <u>Id.</u> The Fourth Circuit has characterized the twelve <u>Johnson</u> factors as follows:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

<u>Id.</u> at 89 n.5 (citation omitted). While "[t]he Supreme Court has indulged a 'strong presumption' that the lodestar number

-20-

represents a reasonable attorney's fee[,]" id. at 88–89, the Johnson factors influence that calculation and the ultimate determination. See id. at 88–90.

Logically, "the number of hours reasonably expended by [counsel]. . . encompasses at least three Johnson factors - Factor 1 (time and labor expended), Factor 2 (novelty and difficulty of question raised), and Factor 7 (time limitations imposed by the client or circumstances)." Id. at 89.

Further, the reasonable hourly rate "subsumes five additional Johnson factors: Factor 3 (skill required to properly perform legal services); Factor 4 (attorney's opportunity cost); Factor 5 (customary fee); Factor 6 (attorney's expectations at outset of litigation; and Factor 9 (experience, reputation, and ability of attorney)." Id.

The above amalgamation leaves this court four Johnson factors to adjust the lodestar fee amount, "Factor 8 (amount in controversy and results obtained); Factor 10 (undesirability of case within legal community); Factor 11 (nature and length of professional relationship between attorney and client); and Factor 12 (attorneys' fee awards in similar cases)." Id.; see

-21-

<u>Uzzell v. Friday</u>, 618 F. Supp. 1222, 1225 (M.D.N.C. 1985)

(citations omitted).[6]

Second, the court must "subtract fees for hours spent on
unsuccessful claims related to successful ones." <u>McAfee</u>, 738
F.3d at 88 (quoting <u>Equifax Info Servs.</u>, 560 F.3d at 244).

Third, the court should award "some percentage of the
remaining amount, depending on the degree of success enjoyed by

---

[6] While the Fourth Circuit declined to "further assess or
identify which of the <u>Johnson</u> factors might be subsumed by the
lodestar calculations[,]" since the relevant Supreme Court case,
<u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542 (2010), "was
addressing the enhancement of a lodestar attorney's fee[]" but
the present case "simply reduced that calculation[,]" <u>McAfee v.
Boczar</u>, 738 F.3d 81, 89-90 (4th Cir. 2013), the Circuit did note
that other circuits have "agree[d] that any <u>Johnson</u> factor
subsumed in the lodestar calculation should in no other way
affect the determination of an attorney's fee[.]" <u>Id.</u>
Specifically, it observed:

> At least three of our sister circuits have also
> evaluated the relationship between <u>Perdue</u> and <u>Johnson</u>.
> <u>See, e.g.</u>, <u>Black v. SettlePou, P.C.</u>, 732 F.3d 492, 502
> (5th Cir. 2013) ("The lodestar may not be adjusted due
> to a <u>Johnson</u> factor that was already taken into
> account during the initial calculation of the
> lodestar."); <u>Millea v. Metro-N. R.R. Co.</u>, 658 F.3d
> 154, 167 (2d Cir. 2011) ("[A] court may not adjust the
> lodestar based on factors already included in the
> lodestar calculation itself because doing so
> effectively double-counts those factors."); <u>Anchondo
> v. Anderson, Crenshaw & Assocs., L.L.C.</u>, 616 F.3d
> 1098, 1103 (10th Cir. 2010) (determining that <u>Perdue</u>
> "appears to significantly marginalize the twelve-
> factor <u>Johnson</u> analysis").

<u>McAfee</u>, 738 F.3d at 90 n.7.

-22-

the [movant]." Id. (quoting Equifax Info Servs., 560 F.3d at 244).

**V.   ANALYSIS — FEE AMOUNT**

At the outset of this analysis, this court recognizes the fact that the fees awarded are significantly reduced from those requested. This does not in any way suggest the parties, or counsel, have acted unreasonably. The parties and counsel have to staff and defend this matter as deemed appropriate using reasonable foresight. On the other hand, this court's fee analysis is conducted with the benefit of hindsight based solely on the evidence and persuasive authority.

**A.   Reasonable Hourly Rates**

The Fourth Circuit has highlighted that the fee applicant bears the burden of "establishing the reasonableness of those hourly rates." McAfee, 738 F.3d at 91. Further, "a fee applicant is obliged to show that the requested hourly rates are consistent with the prevailing market rates in the relevant community for the type of work for which he seeks an award." Id. (internal quotation marks and citation omitted). Specifically, the evidence "deemed competent to show prevailing market rates includes affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Id.

-23-

(internal quotation marks and citation omitted). Finally, "[t]he relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994).

In summary and in application, Defendants Ashley and LIA must prove reasonable hourly rates for Lanham Act litigation located reasonably near Greensboro, North Carolina.

In support of its requested fee rates ($430 for partners in 2013, then $475 for 2014-2015; and $300 followed by $330 for associates in the same respective years), LIA submitted only a sampling of hourly rates "charged by large law firms that maintain offices in North Carolina, according to a 2013 rate survey conducted [by] the National Law Journal." (LIA Br. (Doc. 240) 15-16.) LIA then provides the average hourly billing rates (for partners and associates) for Alston & Bird ($675, $425); Bingham McCutchen ($795, $495); Bryan Cave ($590, $405); Kilpatrick, Townsend & Stockton ($550, $385); and Williams

Mullen ($385, $295). (<u>Id.</u> at 16.) Even if[7] the above firms'

billing rates were appropriate as a frame of reference in the

present matter, "the fee applicant must produce satisfactory

specific evidence of the prevailing market rates in the <u>relevant</u>

<u>community</u> for the <u>type of</u> <u>work</u> for which he seeks an award."

<u>Plyler v. Evatt</u>, 902 F.2d 273, 277 (4th Cir. 1990) (emphasis

added) (citations omitted). LIA's charged fees may very well

have been reasonable in the present matter, but LIA "has not met

[its] burden of establishing the prevailing market rates" in the

relevant community for the type of work." <u>Equifax Info. Servs.,</u>

560 F.3d at 246.

In support of its requested average fee rates ($566 for

W. Andrew Copenhaver; $444 for Robert D. Mason, Jr., and $376

for Brent F. Powell), Ashley references the very same "2013 rate

survey conducted by the National Law Journal," comparing itself

---

[7] For example, according to its website, Alston & Bird is a
"leading national and international firm" with approximately 850
attorneys, only 32 of which are spread between its Charlotte and
Durham offices. (Firm, Alston & Bird (Sept. 28, 2016, 11:43 AM),
http://www.alston.com/firm/alston/.) According to its website,
Bryan Cave is a firm of approximately 1,000 lawyers,
approximately 13 of which are located in a Charlotte office.
(Charlotte, Bryan Cave (Sep. 28, 2016, 11:45 AM),
https://www.bryancave.com/en/offices/charlotte.html.) Further,
Bingham McCutchen no longer exists. (David Lat, <u>More Info About</u>
<u>the Morgan Lewis/Bingham McCutchen Deal, Above The Law</u>
(Sept. 28, 11:47 AM), http://abovethelaw.com/2014/11/more-
fallout-from-the-morgan-lewis-bingham-mccutchen-deal/.)

to almost exactly the same list of firms that LIA did in its brief. (Ashley Br. (Doc. 245) at 16-17.) However, Ashley goes on to highlight relatively recent fee award rates in complex federal litigation cases throughout the state of North Carolina. (Id. at 18.) Notably, Ashley only compares Mr. Powell's rates (the lowest of the three attorneys) to the other verdicts, as the provided examples highlight instances of $350 and $385 hourly. (Id.) As such, "[t]here is an absence of evidence in the record to support rates of [$566 for Mr. Copenhaver] and [$444 for Mr. Mason] per hour for charges by [Ashley's] attorneys." Equifax Info. Servs., 560 F.3d at 246.

Typically, courts look to "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Id. at 245. Because this court has no such affidavits to consider, its analysis turns to hourly rates in comparable fee awards for complex federal litigations in North Carolina. Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC, 747 F. Supp. 2d 568, 593 (W.D.N.C. 2010) ("In the absence of specific evidence regarding the prevailing market rate, the Court may establish a reasonable rate based upon its own knowledge and experience of the relevant market.").

In Morris v. Lowe's Home Ctrs., Inc., the court, based on
its "preexisting knowledge and experience with the relevant
legal market," adopted an hourly rate of $350 for a federal
disability claim (when there was no additional evidence to
support the movant's affidavit identifying a rate of $423
hourly). Morris, No. 1:10CV388, 2012 WL 5338577, at *5 (M.D.N.C.
Oct. 30, 2012). In In re Wachovia Corp. ERISA Litigation, a
class action ERISA case, a court presented with $700 and $800
hourly rates (similar to those in the twice-presented National
Law Journal study) found that "rates of $400 per hour for
partners, $225 for associates, and $75 for paralegals [were
proper], as these rates are more commensurate with the market
rates prevailing in the Charlotte community for similar services
by lawyers of reasonably comparable skill, experience, and
reputation." In re Wachovia, Civil No. 3:09cv262, 2011 WL
7787962, at *6 (W.D.N.C. Oct. 24, 2011) (internal quotation
marks and citation omitted). In Diehl v. Diehl, the court
awarded an hourly rate of $350 for federal litigation upon
consideration of the fact that both movant attorneys charged
that same rate and an outside affidavit provided that "the
hourly rate of $350.00 per hour is a reasonable and customary
rate for an attorney involved in a federal litigation in the
Charlotte Division for the United States District Court for the

-27-

Western District of North Carolina." <u>Diehl</u>, No. 3:14CV288, 2015
WL 3440312, at *1 (W.D.N.C. May 28, 2015). Finally, in <u>Morris v.
AAA Moving & Storage, LLC</u>, the court found that "$250.00 is a
reasonable rate based on the contents of the affidavits and its
own experience." <u>AAA Moving & Storage</u>, No. 5:15-CV-68, 2015 WL
5089129, at *1 (W.D.N.C. Aug. 27, 2015).

In conclusion, based on its experience and due to the lack
of affidavits from local attorneys with relevant knowledge, the
court finds that an hourly rate of $350[8] is reasonable for all
partners involved in this litigation and an hourly rate of $225
is reasonable for any associates. This determination satisfies
the "reasonable hourly rate" component of the "lodestar
analysis" and considers <u>Johnson</u> Factors 3, 4, 5, 6 and 9.
<u>McAfee</u>, 738 F.3d at 81, 89.[9]

### B. <u>Reasonable Time Spent</u>

This court now turns to "the number of hours reasonably
expended by [the movant] lawyers." <u>McAfee</u>, 738 F.3d at 89.

---

[8] The above case law illustrates the general discrepancy
between the National Law Journal survey rates and rates actually
awarded for complex civil litigation throughout North Carolina.
The determined fee amount is a result of the cited cases as well
as this court's discretion and case authority.

[9] This finding should not be construed as a general comment
on the rates charged. Instead, this is a finding based solely on
the relevant evidence and authorities presented in this case.

-28-

Ashley notes as an initial matter in its suggested lodestar calculation that in addition to limiting the relevant requested time period, it "is also not seeking recovery of any fees for paralegals or for attorneys who assisted solely on an ad hoc basis." (Ashley Br. (Doc. 245) at 14 n.6.) Consequently, it urges that its "fee request . . . reflects a total discount of 39.4 percent from the full amount of fees incurred." (Id.)

LIA is "limiting its claim for attorney's fees to those fees that it incurred between October 15, 2013 – the date on which DRI filed its motion for summary judgment – and May 13, 2015, the date of oral argument at the Fourth Circuit Court of Appeals." (LIA Br. (Doc. 240) at 16.) LIA also "omitted from its request those fees that were billed by LIA's counsel and support staff during that time in support of LIA's renewed Rule 41(d) motion" before concluding that "LIA's requested attorney fees for this period total $530,412.50." (Id.)

Due to the various discounts, billing practices, timeframe limitations and methods of documentation, this court makes the following determinations based on the information before it. Between November 7, 2013, and June 4, 2015, LIA's attorneys billed their client for a cumulative 1,099.7 associate hours and 572 partner hours at varying rates. (LIA Br., Ex. 1, Declaration of Cameron R. Argetsinger, Ex. 3 (Doc. 240-1).) During the same

-29-

time frame, Ashley billed its client for 1,304.9 partner hours (that is, adding the subtotals of 417.6 hours for Mr. Copenhaver, (Declaration of Brent F. Powell, Ex. 2 (Doc. 243-2) at 37); 353.1 hours for Mr. Mason, (id. at 67); and 534.2 hours for Mr. Powell (id. at 89)).

In re Outsidewall Tire Litigation, 748 F. Supp. 2d 557, 559 (E.D. Va. 2010), involved an attorneys' fees motion in the context of a Lanham Act case. In its recitation of applicable legal principles, the court noted that "[c]ourts frequently exercise their discretion to reduce an entire fee request or portions thereof by a stated percentage in order to address some deficiency in the application, such as redundant time entries, failure to exercise billing judgment, or excessive number of hours sought." Id. at 565. The court first calculated the overall number of hours performed by the plaintiffs' attorneys and reduced the figure for reasons such as lumping and other deficiencies. Id. at 567.

A significant number of LIA's billing entries reflect a practice known as "block billing,"[10] which is "where multiple tasks are put together in the same billing entry." Supler v. FKAACS, Inc., No. 5:11-CV-229-FL, 2013 WL 6713120, at *4 (E.D.N.C. Dec. 19, 2013). "Although block billing is not prohibited, its use is disfavored by federal courts." Lamonaca v. Tread Corp., 157 F. Supp. 3d 507, 519 (W.D. Va. 2016) (internal quotation marks and citations omitted). Specifically, block billing tends to "[inhibit] the court in its effort to discern with precision how the . . . hours were billed and precisely why those hours were needed." Dyer v. City of Gastonia, DOCKET NO. 3:15-cv-00033-MOC-DCK, 2016 WL 4443190, at *5 (W.D.N.C. Aug. 19, 2016). In the presence of block billing, courts have reduced fee awards in amounts ranging from 10 to 20

---

[10] For example: "Review, revise, and edit motion for summary judgment; confer with C. Artesinger regarding same; review Ashley's draft motion for summary judgment and email comments to Ashley's counsel." (LIA Br., Ex. 1, Declaration of Cameron R. Argetsinger, Ex. 3 (Doc. 240-1) at 57). "Meetings with Jim Koch regarding expert report; review summary judgment briefs; review Greenfield and Silver depositions; review Armistead's overhead sensitivity analysis; review Epperson's confidential deposition testimony." Id. at 58-59. "Finalize outline for custodial deposition; communicate with DRI counsel regarding deposition; prepare exhibits for deposition; communicate with J. Koch, J. Holmes and D. Bailey regarding DRI subpoenas for file materials; confer with B. McVary regarding drafting objections to subpoenaed materials; travel to Seattle for deposition and preparation in-flight." Id. at 91.

-31-

percent. See Dawson v. McPherson, No. 1:14CV225, 2014 WL 4748512, at *5 (M.D.N.C. Sept. 23, 2014); Sky Cable, LLC v. Coley, Civil Action No. 5:11CV00048, 2014 WL 4407130, at *5 (W.D. Va. Sept. 8, 2014); Jones v. Southpeak Interactive Corp. of Delaware, Civil Action, No. 3:12CV443, 2014 WL 2993443, at *9 (E.D. Va. July 2, 2014), aff'd, 777 F.3d 658 (4th Cir. 2015); E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP, No. 1:13CV46, 2014 WL 1246838, at *4 (M.D.N.C. Mar. 24, 2014), aff'd and adopted, No. 1:13-CV-46, 2014 WL 1689727 (M.D.N.C. Apr. 29, 2014); Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 717 (E.D. Va. 2012).

As such, this court finds a 15% reduction (of 165 hours in LIA's billed associate hours and 85.8 in billed partner hours) from 1,099.7 to 934.7 for associates and from 572 to 486.2 for partners to be appropriate. This court does not find the need for any similar deduction for block billing in Ashley's billing records.

This court does, however, find significant reason for a similar reduction as a result of Ashley's staffing decisions. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

Throughout its brief, Ashley contends that "[u]nder any standard, DRI's theory . . . was objectively unreasonable" and that "there was no way that DRI could prevail on the merits." (See Ashley Br. (Doc. 245) at 6, 13.) Despite these allegations, Ashley staffed three of its most accomplished partners, (see id. at 16-17), on the matter, who accumulated 1,304.9 hours, undertaking a "tremendous amount of work." (Id. at 15.) The court's concerns over the complexity and need for such experienced partners to be working on the case, given that it was "exceptional" (as argued by Defendants) in terms of the Lanham Act, raises some questions – namely, whether less experienced individuals in the firm (who likely bill at a lower hourly rate), could complete the necessary tasks in an equally competent manner, given the objectively obvious issues with DRI's positions at that point in time. Consequently, since the court is in the position of evaluating the time and labor required given the novelty and difficulty of the questions and the skill needed to address these questions, the premise behind the exceptionalness of DRI's behavior towards the end of the case and that DRI should have known better, becomes more directly relevant. See, e.g., McAfee, 738 F.3d at 89.

Given the apparent overstaffing of an objectively meritless claim, this court finds a 10% reduction of 130.5 hours (from

1,304.9 to 1,174.4 hours) in Ashley's billed hours to be proper.
See Dawson, 2014 WL 4748512, at *5 (reducing the reported number
of hours by 20% for duplicative or excessive hours); Adams v.
Trustees of Univ. of N. Carolina-Wilmington, No. 7:07-CV-64-H,
2014 WL 7721821, at *4 (E.D.N.C. June 10, 2014) (reducing an
award by 30% for excessive hours, among other things); Beasley
v. Sessoms & Rogers, P.A., No. 5:09-CV-43-D, 2011 WL 5402883, at
*4 (E.D.N.C. Nov. 8, 2011) (reducing hours by 50% due to
generally poor recordkeeping and excessive billing).

Continuing in the realm of duplicative billing or
overstaffing, this court has concerns regarding the apparent
"shared work" between LIA and Ashley's respective attorneys.
"This Court notes, however, that the work of more than one
attorney on the same litigation task does not automatically mean
overstaffing has occurred." Abusamhadaneh v. Taylor, No.
1:11cv939 JCC/TCB, 2013 WL 193778, at *22 (E.D. Va. Jan. 17,
2013). In the present circumstance, this court's concern is not
necessarily with attorneys working on the same task, but with
evidence suggesting that either Ashley or LIA's attorneys might
have originally done the work and simply allowed the other to
use it without additional analysis and oversight.

Here, both Ashley and LIA cite to "N.C. Gen. Stat.
§ 22-6.1." (Ashley Br. (Doc. 245) at 12-13; LIA Br. (Doc. 240)

-34-

at 12-13.) As far as this court can find, that code section does not exist. Ashley and LIA go on to cite "N.C. Gen. Stat. § 22-6.1" for the proposition that attorneys' fees are properly awarded when "there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading," language that is found in N.C. Gen. Stat. § 6-21.5. (Id.) While this court would not typically hold a litigant accountable for a mere typographical error, the present situation appears to be different. Ashley and LIA make the same error multiple times while referring to precisely the same allegedly quoted statutory language, seeming to suggest duplicative billing.

Similarly, Ashley and LIA both cite to "a 2013 rate survey conducted by the National Law Journal" when trying to justify their hourly rates. (Ashley Br. (Doc. 245) at 17); (LIA Br. (Doc. 240) at 15.) As outlined above by this court and clearly established by case law, the correct manner of proving reasonable hourly rates is with "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Equifax Info Servs., 560 F.3d at 245. Not only did both parties fail to do so, but both parties also tried to prove the reasonableness of their rates using the exact same

-35-

year's edition of the exact same survey. (Ashley Br. (Doc. 245) at 17); LIA Br. (Doc. 240) at 15.)

Courts "adher[e] to the principle that duplicative, excessive, or redundant hours should not be compensated . . . ." Trimper v. City of Norfolk, 58 F.3d 68, 76 (4th Cir. 1995); see Goodwin v. Metts, 973 F.2d 378, 384 (4th Cir. 1992) (reducing fees by 50% due to overstaffing); Spell v. McDaniel, 852 F.2d 762, 769 (4th Cir. 1988) (reducing claimed hours by 60% due to overstaffing and duplicative hours).

Given the seeming "shared work" in the defense of the present matter, this court finds an additional 15% deduction from the original amount of billed hours to be proper as to each party's claimed quantity. LIA's hours, originally claimed at 1,099.7 hours for associates and 572 hours for partners, reduced first by 15% for block billing (165 hours and 85.8 hours, respectively) now stands at 769.8 hours for associates and 400.4 for partners. Ashley's hours, originally claimed at 1,304.9 hours, reduced first by 10% for overstaffing, now stands at 978.7 hours. This determination satisfies the "reasonable time spent" component of the "lodestar analysis" and considers Johnson Factors 1, 2 and 7. McAfee, 738 F.3d at 89.

## C.    **Potential Further Deductions**

This court must now "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Id. at 88 (internal quotation marks and citation omitted). Ashley's "reasonable hours" figure (978.7 hours) multiplied by this court's "reasonable rate" ($350 for partners) results in a fee award of $342,545. LIA's "reasonable hours" figure (769.8 hours for associates and 400.4 hours for partners) multiplied by this court's "reasonable rate" ($225 for associates and $350 for partners) results in fee awards of $173,205 for associates and $140,140 for partners, for a total of $313,345.

Next, this court is to consider the remaining Johnson factors: "Factor 8 (amount in controversy and results obtained); Factor 10 (undesirability of case within legal community); Factor 11 (nature and length of professional relationship between attorney and client); and Factor 12 (attorneys' fee awards in similar cases)." Id.  Factors 8, 10 and 11 do not suggest any further reduction, but Factor 12 gives the court pause, turning its attention to other prevailing defendants in Lanham Act cases.

Possibly as evidenced by Ashley's citation of a 17-year-old copyright infringement case awarding a significant fee to a

-37-

plaintiff, (<u>ABC, Inc. v. Primetime 24</u>, 67 F. Supp. 2d 558, 567 (M.D.N.C. 1999), <u>aff'd</u>, 232 F.3d 886 (4th Cir. 2000)), and a 16-year-old Lanham Act case awarding a large amount of fees in California, (<u>Cairns v. Franklin Mint Co.</u>, 115 F. Supp. 2d 1185, 1187 (C.D. Cal. 2000), <u>aff'd</u>, 292 F.3d 1139 (9th Cir. 2002)), few district courts within the Fourth Circuit, much less the Fourth Circuit itself, have awarded Lanham Act fees to a prevailing defendant when finding that the plaintiff's behavior was "exceptional." (Ashley Br. (Doc. 245) at 19.); <u>see</u> <u>San Francisco Oven</u>, 222 F. App'x at 237 (awarding $117,000 to a defendant after the court dismissed the plaintiff's Lanham Act claims at summary judgment); <u>Astornet Techs</u>, 2016 WL 4141006, at *7 (awarding $79,236 when a plaintiff persisted in litigating its claim after failing to find the requisite support, which the court deemed "exceptional"); <u>Precision Links Inc. v. USA Prods. Grp., Inc.</u>, Civil No. 3:08-cv-00576-MR, 2014 WL 2861759, at *5 (W.D.N.C. June 24, 2014) (awarding $165,260.70 to a defendant under the "exceptional" language of the Patent Act due to litigation misconduct). While the present case did involve legal extensive work (including full summary judgment briefing and an appeal to the Fourth Circuit), in light of the above contextual award ranges to other defendants prevailing under "exceptional" categorizations, this court is inclined to further deduct 20%

-38-

from the newly-calculated total fee awards of each party in order to bring the present award closer to the range of similar cases. This conclusion flows logically from the continued assertion that Plaintiff's claim was "exceptional," as a claim as meritless as Defendants allege should not justify an award far above that of similar cases. This calculation reduces Ashley's fee award to $274,036 and LIA's fee award to $250,676.

This court is next invited to "subtract fees for hours spent on unsuccessful claims related to successful ones." Id. Because this court granted Ashley and LIA's motions for summary judgment on all counts, no further reduction is proper. Design Res., Inc. v. Leather Indus. of Am., No. 1:10CV157, 2014 WL 4159991, at *19 (M.D.N.C. Aug. 19, 2014), aff'd, 789 F.3d 495 (4th Cir. 2015).

Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the [movant]." McAfee, 738 F.3d at 88 (internal quotation marks and citation omitted). Under the same logic employed above, this court does not further reduce the award.

As stated above, this court awards $274,036 to Ashley and $250,676 to LIA.

## VI. STATE LAW ATTORNEYS' FEES

### A. Legal Standard

North Carolina law grants that:

> [i]n any civil action, [or civil] proceeding . . . the
> court, upon motion of the prevailing party, may award
> a reasonable attorney's fee to the prevailing party if
> the court finds that there was a complete absence of a
> justiciable issue of either law or fact raised by the
> losing party in any pleading.

N.C. Gen. Stat. § 6-21.5.[11]

Notably, while "a motion for summary judgment . . . is not
in itself a sufficient reason for the court to award attorney's
fees, [it] may be evidence to support the court's decision to
make such an award." N.C. Gen. Stat. § 6-21.5. Similarly, and as
cited by Defendants, "[t]he mere fact that [a] plaintiff[']s[]
complaint survived a Rule 12(b)(6) motion to dismiss is not
determinative proof of justiciability. The purpose of a Rule
12(b)(6) motion to dismiss is to test the legal sufficiency of
the complaint." <u>Winston-Salem Wrecker Ass'n v. Barker</u>, 148 N.C.
App. 114, 119, 557 S.E.2d 614, 618 (2001) (citation omitted).

---

[11] As mentioned above, both defendants argue that the
applicable provision is from N.C. Gen. Stat. § 22-6.1. Not only
is this court unable to find such a general statute, chapter 22
addresses contracts requiring writing, whereas chapter 6 (where
§ 6-21.5 is located) addresses liability for court costs. N.C.
Gen. Stat. ch. 6, 22. Further, § 6-21.5 contains the relevant,
quoted language by both Defendants. (<u>See</u> LIA Br. (Doc. 240) at
10; Doc. 242 at 2; Ashley Br. (Doc. 245) at 12.)

-40-

Indeed, "[a] justiciable issue has been defined as an issue that is 'real and present as opposed to imagined or fanciful.'" Sunamerica Fin. Corp. v. Bonham, 328 N.C. 254, 257, 400 S.E.2d 435, 437 (1991) (quoting In re Williamson, 91 N.C. App. 668, 373 S.E.2d 317 (1988).

However, a once-justiciable pleading "may, when read with a responsive pleading, no longer present a justiciable controversy." Id. at 258, 400 S.E.2d at 438. At core, "in deciding a motion brought under N.C.G.S. § 6-21.5, the trial court is required to evaluate whether the losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." Id. "The purpose behind N.C. Gen. Stat. § 6-21.5 is to discourage frivolous legal action." McLennan v. Josey, 785 S.E.2d 144, 148 (N.C. App. 2016) (internal quotation marks and citation omitted).

### B. **Analysis**

Both Defendants also urge for attorneys' fees under North Carolina state law. LIA urges that state law "provides an alternative basis to award LIA's fees for DRI's Lanham Act claim" as well as for the remaining state law claims. (LIA Br. (Doc. 240) at 12-13.) It argues that DRI's claims failed to present justiciable issues, largely based on a lack of

-41-

supporting evidence. (Id. at 13-14.) Additionally, as to the negligent and fraudulent concealment and negligent misrepresentation and fraudulent concealment claims, LIA urges that "the Court found there was no legal basis for the claims because DRI failed to cite any authority to establish a legal duty owed to DRI" and that this lack of a "legal foundation" resulted in "no justiciable issue in" either count. (Id. at 14.)

Ashley presents similar arguments in favor of its motion for attorneys' fees. It emphasizes that under North Carolina law, "[t]he mere fact that plaintiffs' complaint survived a Rule 12(b)(6) motion to dismiss is not determinative proof of justiciability." (Ashley Br. (Doc. 245) at 13 (quoting Winston-Salem Wrecker Ass'n v. Barker, 148 N.C. App. 114, 119, 557 S.E.2d 614, 618 (2001)).) Ashley premises its fees requests for both Lanham Act claims and general state law claims under this provision and on "the same . . . rationale [as] for awarding fees under the Lanham Act — once DRI received the Klein Survey, it knew or should have known that . . . its complaint no longer contained a justiciable issue, as there was no way that DRI could prevail on the merits." (Id.)

This court finds the relevant analysis under North Carolina state law to be parallel to the analysis under the Lanham Act. That is, "plaintiff should reasonably have become aware that he

-42-

lacked the statutory standing necessary to pursue his [Lanham Act] claim prior to summary judgment." <u>Gravelle</u>, 2016 WL 3920208, at \*3 (internal quotation marks omitted) (citing <u>Credigy Receivables, Inc. v. Whittington</u>, 202 N.C. App. 646, 655–57 (2010). As outlined above, Plaintiff's continued evaluation of its position should have been influenced by the fact that, following discovery, no facts were indicating consumer confusion and there were not questionable statements that fell within the contours of the Lanham Act. As such, this court would find an award of fees to be proper under North Carolina state law.

## VII. <u>CONCLUSION</u>

For the reasons set forth herein, **IT IS HEREBY ORDERED** that the Motion for Attorney's Fees filed by Defendant Leather Industries of America (Doc. 239) and the Motion for Attorneys' Fees Defendant Ashley Furniture Industries, Inc. (Doc. 242) are **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Design Resources, Inc., shall pay attorneys' fees in the amount of $250,676 to Defendant Leather Industries of America and attorney's fees in the amount of $274,036 to Defendant Ashley Furniture Industries, Inc.

-43-

This the 29th day of September, 2016.

_____
United States District Judge